ORDER RE DEFENDANTS’ MOTION TO DISMISS
 

 KENYON, District Judge.
 

 Plaintiff in this action seeks damages and an injunction pursuant to
 
 Bivens v. Six Unknown Named Agents,
 
 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for alleged violations of its First and Fourth Amendment rights in connection with an extensive search and seizure operation conducted by the Federal Bureau of Investigation. Defendants, 20 agents and former FBI agents and the Department of Justice,
 
 [1]
 
 
 *943
 
 have filed motions to dismiss the present complaint on numerous grounds. The court, as indicated in its order entered June 23, 1981, denies the motions in their entirety with the exception of striking several of the provisions plaintiff has offered as a basis for jurisdiction and its constitutional claims.
 

 In the early morning of July 8, 1977, more than 150 FBI agents and other personnel, authorized by virtually identical warrants, entered three facilities of the Church of Scientology. One was the site of the Founding Church of Scientology in Washington, D.C., and the others were the Los Angeles premises of plaintiff, the Church of Scientology of California (hereinafter referred to as “the Church”). The warrants identified 162 items and classes of items to be seized based upon an affidavit of a former Scientology official who testified with respect to the thefts in 1975 of Government documents from the headquarters of the Department of Justice in Washington, D.C., and the offices of the United States Attorney for the District of Columbia. The vast majority of the agents participated in the Los Angeles searches, during which nearly 50,000 documents were seized in the course of approximately 23 hours.
 

 Shortly after the execution of the warrants, the Church of Scientology filed this action and along with the Founding Church, two additional federal court actions in Los Angeles and the District of Columbia seeking the return and suppression of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.
 
 [2]
 
 Following a stay of proceedings entered October 20, 1977, very little of significance occurred in this action for nearly three years, during which time the Rule 41(e) petitions were actively litigated.
 

 On July 27, 1977, Chief Judge William B. Bryant ruled that the warrant executed in the District of Columbia was invalid on its face as a “general warrant” in violation of the particularity requirement of the Fourth Amendment.
 
 [3]
 

 In re Search Warrant Dated July 4, 1977,
 
 436 F.Supp. 689 (D.D.C.1977). On December 1, 1977, the D.C. Circuit reversed, and upheld the validity of the warrant, remanding for consideration of the legality of the execution of the warrant.
 
 In re Search Warrant Dated July 4, 1977,
 
 572 F.2d 321 (D.C.Cir.1977),
 
 cert. denied sub nom. Founding Church of Scientology v. United States,
 
 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978).
 
 [4]
 

 Following several days of hearings, Judge Malcolm M. Lucas in memorandum opinions
 
 *944
 
 of April 4 and' July 5, 1978, upheld the facial validity and the execution of the warrants in Los Angeles on all grounds raised by the Church.
 
 Church of Scientology v. United States,
 
 No. CV 77-2565-MML (C.D. Cal.1978) [hereinafter cited as the Lucas decision]. On August 14, 1978, eleven members of the Church of Scientology, including several of its top officers, were indicted by a federal grand jury in the District of Columbia. On February 22, 1979, the Ninth Circuit, citing
 
 DiBeila v. United States,
 
 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1963), dismissed the Church’s appeal of the Lucas decision in light of its potential disruptive effect on pending criminal proceedings in the District of Columbia.
 
 Church of Scientology v. United States,
 
 591 F.2d 533 (9th Cir. 1979),
 
 cert. denied,
 
 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 729 (1980).
 

 Nine of the Scientology defendants scheduled to go to trial before Judge Charles B. Richey moved to suppress the evidence seized during the July 8, 1977, searches. The suppression motion concerned only the legality of the Los Angeles searches, as the Government took the position that it had not shown any of the documents seized in the District of Columbia to the grand jury nor did it intend to use such documents at or in preparation for trial.
 
 United States v. Hubbard,
 
 493 F.Supp. 209, 212 (D.D.C.1979). The suppression hearing began on July 3, 1979, in Los Angeles and ended in Washington, D.C. on August 29, 1979.
 

 In an opinion issued September 13, 1979, Judge Richey upheld the facial validity of the Los Angeles warrants, and ruled that the 201 documents the prosecution intended to introduce in its case-in-chief had been legally seized. He rejected the attempt of the nine Scientology defendants
 
 [5]
 
 to invalidate the seizure of the 201 documents based upon, among other Fourth Amendment contentions, the seizure of numerous other documents alleged to be outside the scope of the warrant. Judge Richey based his denial of the suppression motion not only on a broad finding that the Government agents did not violate the Fourth Amendment, but also on two specific legal grounds — the virtual absence of standing to challenge seizures and an apparent rejection of defendants’ theory for suppressing the 201 documents as beyond the permissible scope of the exclusionary rule.
 
 Id.
 
 at 215, 224. On October 26, 1979, each of the nine defendants was found guilty on a stipulated record of one count of the indictment.
 
 [6]
 
 They were sentenced on December 6-7, 1979, and appealed. Arguments were held February 27, 1981, and the D.C. Circuit in a
 
 per curiam
 
 opinion issued October 2,1981, affirmed the convictions and rejected all of defendants’ contentions, including their challenge to the denial of the suppression motion.
 
 United States v. Heldt,
 
 668 F.2d 1238 (D.C.Cir. 1981).'
 

 In the present action, activity relevant to the current proceedings began with the filing of the Second Amended Complaint on June 2, 1980. On June 23, 1980, defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b). At the July 21, 1980, hearing on the motion before Judge William Matthew Byrne, Jr., defendants agreed to withdraw their motion and plaintiff on September 3, 1980, filed the Third Amended Complaint (hereinafter referred to as the Complaint). It alleges that the 20 individual defendants and the U.S. Department of Justice violated plaintiff’s First, Fourth, Fifth and Ninth Amendment rights in the execution of the Los Angeles searches and their aftermath.
 

 
 *945
 
 The Complaint contends that defendants violated plaintiff’s rights and those of its members to be free from unreasonable searches and seizures in several specific respects, including: 1) conducting a “general search” involving the seizure of thousands of documents beyond the geographic scope of the search authorized in the warrant (¶ 14), and beyond the 162 categories of seizable documents described in the warrant and accompanying affidavit (¶¶ 15, 16); 2) using the search as an opportunity to develop information for collateral Government investigations (¶¶ 13, 16); and 3) the “wanton and needless” destruction of Church property in connection with the forcible breaking of doors, locks and safes (¶ 19).
 
 [7]
 
 Plaintiff also alleges that its constitutional rights were violated when defendants disrupted Church activities by totally occupying the premises searched without any legitimate law enforcement purpose (¶ 17), used physical and other means of intimidating and harassing Church members who were present (¶ 18), and disseminated information gained in the searches to individuals and entities engaged in litigation against the Church (¶ 20). Plaintiff asserts that all of these actions were taken “in bad faith” and for the purpose of “harassing” the Church and its members in the exercise of their First Amendment rights (¶ 21), and as part of a “continuing effort” by the Justice Department, stretching over nearly a quarter of a century, to interfere with, and ultimately to destroy, the Church of Scientology (¶¶ 7-12).
 

 The Church seeks at least $100 million in general damages from defendants in their individual and official capacities, and at least $400 million in punitive damages. The Church also seeks injunctive and declaratory relief and reasonable attorneys’ fees.
 

 On October 20, 1980, defendants filed the present Rule 21(b) motion to dismiss the Complaint. Defendants contend that it should be entirely dismissed for lack of specificity and failure to state a claim upon which relief may be granted, and that the request for injunctive relief should be stricken on several grounds. Defendants also object to various claims and bases for jurisdiction set forth in the complaint. Three of the individual defendants assert personal defenses of improper service of process and/or lack of personal jurisdiction. Defendants also assert that the Lucas decision on the Rule 41(e) motion and Judge Richey’s ruling on the Scientology defendants’ suppression motion each bar plaintiff under the doctrine of collateral estoppel from attempting to relitigate any of the allegations of the complaint.
 

 The Court held a hearing on the motion on November 10, 1980, and submitted six additional questions to the litigants by minute order dated November 12, 1980. The Court held additional hearings on January 15, and March 4, 1981, before which the litigants submitted further documents and briefing. Meanwhile, the Department of Justice, which had not been served at the time the general motion to dismiss the Third Amended Complaint was filed, also moved to dismiss on February 9, 1981, on the ground that it is not a suable entity under the doctrine of sovereign immunity. The court denied the motion at a hearing on March 2, 1981, and the Department moved to reconsider, after which an additional hearing was held and numerous briefs were filed. Further memoranda were submitted in early June on the additional claim by the Department that Plaintiff’s dissemination of information claim in Paragraph 20 is barred by res judicata.
 

 I. LACK OF SPECIFICITY
 

 Defendants urge the court to dismiss with prejudice under Rule 12(b)(6) the
 
 *946
 
 present Complaint, which they describe as a “hodgepodge of generalized and conclusory allegations, vaguely linked to a broad claim of an illegal search, unencumbered by any specific allegations as to what defendant did what to whom, or where or when.” Defendants’ Memorandum of October 3, 1980, at 13.
 
 [8]
 
 Defendants assert that the Complaint fails to satisfy the alleged requirement of
 
 Butz v. Economou,
 
 438 U.S. 478, 507-08, 98 S.Ct. 2894, 2911-2912, 57 L.Ed.2d 895 (1978), that allegations of a constitutional violation against federal officials in their individual capacities be pled with clear and specific facts. Counsel for defendants also urges the court to dismiss from the suit 13 individual defendants who are not named in the text of the Complaint except for the allegation in Paragraph 5 that they were special agents of the FBI at the time of the Los Angeles searches.
 

 The court does not find merit in defendants’ contentions. Nowhere in
 
 Butz
 
 nor in any other case cited by defendants is the “short and plain statement of the claim” standard of Fed.R.Civ.P. 8(a) made inapplicable to
 
 Bivens
 
 actions against federal officials. An action may be dismissed for failure to state a claim only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 [9]
 
 At most,
 
 Butz
 
 serves to remind federal courts that the existing rules of Civil Procedure should be applied “firm[ly]” in order to ensure that federal officaials are not “harassed by frivolous lawsuits.” 438 U.S. at 508, 98 S.Ct. at 2911. In similar constitutional suits against multiple governmental defendants, the courts have not required the plaintiff to do more than apprise defendants of the incident out of which the claim arose and the general nature of the action, especially where, as here, the defendants’ activities are covert and thus by their nature difficult to determine.
 
 See, e.g., Founding Church of Scientology v. Director, Federal Bureau of Investigation,
 
 459 F.Supp. 748, 756-57 (D.D.C.1978);
 
 American Civil. Liberties Union v. City of Chicago,
 
 431 F.Supp. 25, 32 (N.D.Ill.1976). The present Complaint meets these requirements.
 

 Other than to argue lack of specificity, defendants make no serious effort to establish that any paragraph of the Complaint is legally insufficient to state a constitutional claim. The courts have extended
 
 Bivens, supra,
 
 beyond Fourth Amendment claims to encompass several other constitutional provisions, including the First Amendment.
 
 *947
 

 See, e.g., Jacobson v. Tahoe Regional Planning Agency,
 
 558 F.2d 928 (9th Cir. 1977);
 
 Writers Guild of America West, Inc. v. Federal Communications Commission,
 
 423 F.Supp. 1064 (C.D.Cal.1976). The court finds no basis at this time for striking any part of the Complaint as failing to state a cause of action under the First and/or Fourth Amendments.
 

 Defendants’ request to dismiss the 13 defendants not referred to by name in the substantive paragraphs of the Complaint is also denied. Defendants have provided no authority supporting a rule of automatic dismissal of defendants named only in the caption of a complaint, nor would such a technical rule be consistent with the spirit of liberal notice pleading under the Federal Rules. Both of the eases on which defendants rely,
 
 see Potter v. Clark,
 
 497 F.2d 1206, 1207 (7th Cir. 1974) and
 
 Child
 
 v.
 
 Beame,
 
 417 F.Supp. 1023, 1205-26 (S.D.N.Y.1976), are distinguishable from the present action.
 

 In
 
 Potter v. Clark,
 
 the complaint alleged no specific act by
 
 any
 
 defendant, and the court ruled that in any ease the complaint must be dismissed because the issues raised were not cognizable under the Civil Rights Act. In
 
 Child v. Beame,
 
 the defendants who were mentioned only in the caption of the complaint were dismissed because the complaint failed to assert the existence of a conspiracy or to allege facts tying the moving defendants in a personal and direct manner to the challenged action taken by the principal defendant. In any event, the complaint is far from silent on the role of the defendants other than those seven who are alleged in Paragraph 13 to have “directed and supervised” the searches at the Los Angeles premises. Paragraph 12 alleges that “all defendants” engaged in the Los Angeles searches of July 8, 1977, and the 13 defendants named only in the caption and in Paragraph 5 are at several places in the Complaint alleged to have been in “complicity” or “cooperation” with the seven supervisory defendants. (¶¶ 13, 17, 19).
 

 II. INJUNCTIVE RELIEF
 

 Defendants urge the court to dismiss plaintiff’s claims for injunctive relief on two grounds: 1) that the Complaint lacks sufficiently specific allegations of present or likely future harm, a necessary predicate to injunctive relief; and 2) that any injunction that might be granted would intrude too extensively into the discretion and flexibility that must be accorded to law enforcement officials. Although each of these contentions raises legitimate problems, the court believes that dismissal of plaintiff’s request for injunctive relief is unwarranted at this time.
 

 Defendants rely upon
 
 Laird
 
 v.
 
 Tatum,
 
 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), which held that there must be an allegation of a “specific present objective harm or a threat of specific future harm” in order to establish a proper case or controversy over which a federal court has jurisdiction to enjoin data-gathering activities by the Army.
 
 Id.
 
 at 14, 92 S.Ct. at 2326. Paragraph 22 of the Complaint alleges that defendants will continue to engage in the unconstitutional conduct set forth in the Complaint unless an injunction is issued. The allegations of harm to plaintiff from dissemination of documents to litigants against the Church,
 
 see
 
 ¶ 20, and other actions connected with the searches, are substantially more concrete and direct than those in
 
 Laird v. Tatum, supra,
 
 and other cases cited by defendants which involved a mere “subjective chill” on the exercise of constitutional rights.
 
 See Founding Church of Scientology v. Director of FBI, supra,
 
 459 F.Supp. at 760 (refusing to dismiss claim for injunction against collection and utilization of certain information brought by a class of Scientology churches, including plaintiff);
 
 cf. Socialist Workers Party v. Attorney General,
 
 419 U.S. 1314, 1318, 95 S.Ct. 425, 427, 42 L.Ed.2d 627 (1974) (“[w]hether the claimed ‘chill’ is substantial enough is still subject to question, but that is a matter to be reached on the merits, not as a threshold jurisdictional question.”).
 

 Defendants correctly observe that courts should act with great caution in
 
 *948
 
 granting injunctions against law enforcement action or surveillance.
 
 See, e.g., Long v. District of Columbia,
 
 469 F.2d 927, 932 (D.C.Cir.1972). However, injunctive relief may be ordered against law enforcement agencies in appropriate circumstances.
 
 See, e.g., Allee v. Medrano,
 
 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974);
 
 Lyons v. City of Los Angeles,
 
 615 F.2d 1243 (9th Cir. 1980). Defendants have not established that
 
 any
 
 injunctive decree that could be issued in this case would necessarily encroach improperly on legitimate investigative activities. Nor has the Justice Department established, as it contends in its separate motion to dismiss, that it cannot be enjoined because its conduct relevant to this case is “committed to agency discretion by law” and therefore is not reviewable under 5 U.S.C. § 701(a)(2). The Department points to no statute that gives it absolute discretion to commit the acts alleged in the Complaint, and the mere existence of some degree of discretion does not render activity nonreviewable unless the potential disruption of the administrative process is shown clearly to outweigh the need for and feasibility of judicial review.
 
 See, e.g., Local 2855, AFGE (AFL-CIO) v. United States,
 
 602 F.2d 574, 578-80 (3d Cir. 1979);
 
 Ferry v. Udall,
 
 336 F.2d 706, 711 (9th Cir. 1964),
 
 cert. denied,
 
 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). No such clear showing has been made.
 

 III. BASES FOR JURISDICTION AND CONSTITUTIONAL CLAIMS
 

 The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as the complaint states a
 
 Bivens
 
 cause of action under the Federal Constitution. The complaint sets forth numerous other bases for jurisdiction, but the court agrees with defendants that none is valid, and orders them stricken from the Complaint. Plaintiff’s assertion of jurisdiction under 28 U.S.C. § 1343(4) is improper because plaintiff has stated no claim for relief under any act of Congress for the protection of civil rights. Jurisdiction does not lie under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., because that act “does not afford an implied grant of jurisdiction permitting federal judicial review of agency action.”
 
 Califano v. Sanders,
 
 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Nor does the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, provide an independent basis for federal jurisdiction.
 
 Skelly Oil Co. v. Phillips Petroleum Co.,
 
 339 U.S. 667, 671-72, 70 S.Ct. 876, 878-879, 94 L.Ed. 1194 (1950). Plaintiff’s reliance on the mandamus statute, 28 U.S.C. § 1341, is also unavailing because mandamus does not lie in this case. Plaintiff does not seek to compel the execution of a ministerial, non-discretionary act, the duty to perform which is so plainly prescribed as to be free from doubt.
 
 See Lee Pharmaceuticals v. Kreps,
 
 577 F.2d 610, 618 (9th Cir. 1978),
 
 cert. denied,
 
 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979).
 

 Defendants also contend that plaintiff lacks even an arguable basis for asserting a violation of its Fifth and Ninth Amendment rights.
 
 [10]
 
 Plaintiff has provided no authority or hint as to how its Fifth Amendment rights to due process or equal protection, or its Ninth Amendment rights, may have been infringed. Since plaintiff’s claims appear to be adequately encompassed by the First and Fourth Amendments, the court orders stricken from the Complaint any mention of the Fifth and Ninth Amendments.
 

 IV. COLLATERAL ESTOPPEL EFFECT OF THE LUCAS DECISION
 

 In order to have collateral estoppel effect in a subsequent action, an issue of fact or law must be actually litigated and determined by a valid and final judgment,
 
 *949
 
 and the determination of the issue must be essential to the judgment.
 
 Hoag v. New Jersey,
 
 356 U.S. 464, 470, 78 S.Ct. 829, 833, 2 L.Ed.2d 913 (1958);
 
 Haize v. Hanover Ins. Co., 536
 
 F.2d 576, 579 (3d Cir. 1976); Restatement (Second) of Judgments § 68 (Tentative Draft No. 4, 1977).
 

 Plaintiff contends that Judge Lucas’ dismissal of its Fed.R.Crim.P. 41(e) action fails to satisfy the final judgment requirement for collateral estoppel. It urges that his decision must be appealable in order to have preclusive effect in this action, and raises doubts about its appealability in view of its past unsuccessful efforts to appeal. The Ninth Circuit has twice dismissed appeals from the Lucas decision for lack of appellate jurisdiction, once after the indictment of eleven Scientology defendants in the District of Columbia,
 
 Church of Scientology v. United States,
 
 591 F.2d 533 (9th Cir. 1979),
 
 cert. denied,
 
 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 729 (1980), and later, without opinion, after nine of the defendants were convicted.
 

 Defendants, without offering any reasons for appealability, merely surmise that Judge Lucas’ decision “may” be appealable while repeatedly asserting that appealability does not matter. They contend that the decision on the 41(e) motion is “final” for purposes of collateral estoppel, if not for purposes of appeal, since it is not tentative in any way and fully disposes of the Church’s claim for the return of its property.
 

 The court disagrees. It concludes that the Lucas decision cannot be invoked as collateral estoppel unless it is appealable, and further that the decision does not appear to be appealable under the relevant caselaw and policy considerations. The court also believes that the Lucas decision fails to satisfy the actually litigated and full and fair opportunity to litigate standards required for issue preclusion.
 

 A.
 
 Importance of Appealability
 

 Defendants cite some authority suggesting that appealability may not be essential to giving a prior judgment preclusive effect,
 
 see Lummus Co. v. Commonwealth Oil Refining Co.,
 
 297 F.2d 80 (2d Cir. 1961),
 
 cert. denied,
 
 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962);
 
 Sherman v. Jacobsen,
 
 247 F.Supp. 261 (S.D.N.Y.1965).
 
 [11]
 
 Although the issue presents “[l]ive and difficult questions,” IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.416[6], at 2325, this court concludes that the Lucas decision should not collaterally estop plaintiff from relitigating the legality of the search and seizure unless it is now or will at some future time be appealable.
 

 In support of this view, plaintiff cites
 
 Standefer v. United States,
 
 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In that case, the Supreme Court relied heavily upon the absence of an opportunity for appellate review to reject the argument of a convicted aider and abettor that the criminal complaint against him was barred under the doctrine of collateral estoppel by a prior acquittal of the principal. The Court stated that the inability of the Government to obtain appellate review and to utilize certain other procedural devices for correcting errors “strongly militates against” giving a prior acquittal preclusive effect, citing the Restatement (Second) of Judgments § 68.1 (Tentative Draft No. 3, 1976), which denies preclusive effect to any judgment “unreviewable as a matter of law.” 447 U.S. at 23, 100 S.Ct. at 2007. The Court noted that the absence of appellate review makes “often unwarranted” an underlying premise of the estoppel doctrine — a basic confidence that the result achieved in the initial litigation was substantially correct.
 
 Id.
 
 at 23 n.18, 100 S.Ct. at 2007 n.18.
 
 [12]
 

 
 *950
 
 In addition, plaintiff invokes the well-settled rule that a prior judgment does not preclude relitigation of issues it determined if the right to appeal that judgment was destroyed by events beyond the control of the losing litigant,
 
 i.e.,
 
 the appeal became moot.
 
 See
 
 IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.416[1], at 2203. The only external event which had an effect on the right to appeal the 41(e) decision was the Government’s action in indicting eleven members of the Church two months after Judge Lucas issued his ruling. As the Church did not voluntarily destroy its right to appeal, it would be unfair to invoke the 41(e) ruling against it in view of the “critical” importance that the opportunity to appeal has assumed in the law of collateral estoppel.
 
 See Standefer v. United States, supra;
 
 Restatement (Second) of Judgments § 68.1 (Tentative Draft No. 4, 1977) & comment a;
 
 Dorsey v. Solomon,
 
 435 F.Supp. 725, 741-A2 (D.Md.1977),
 
 modified on other grounds,
 
 604 F.2d 271 (4th Cir. 1979).
 
 [13]
 

 Furthermore, giving preclusive effect to the Lucas decision would be inconsistent with the Supreme Court’s decision in
 
 United States v. Wallace & Tiernan Co.,
 
 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1949). That case was a civil antitrust action in which defendants sought to invoke as res judicata a suppression order in a prior criminal action. The district court in that prior action had dismissed the criminal indict
 
 *951
 
 ments and suppressed and returned the subpoenaed documents and copies because women had been excluded from the grand jury. The Supreme Court found that the order was not intended to apply beyond the criminal matter with respect to which it was entered, but even if it was, the Court held that the prior order could not be treated as final for purposes of res judicata since the prior decision was not appealable as it was not litigated as “an independent plenary proceeding.” As discussed in the next section, the Court believes that the 41(e) petition before Judge Lucas similarly lacks sufficient characteristics of independence to be treated as appealable or be given preclusive effect.
 

 B.
 
 Appealability of the Lucas Decision
 

 In dismissing the Church’s appeal for lack of appellate jurisdiction, the Ninth Circuit in
 
 Church of Scientology v. United States, supra,
 
 carefully avoided deciding whether Judge Lucas’ ruling may someday be appealable. The court was troubled by the fact that the action was brought by the Church itself, against which there has not yet been any indictment.
 
 See
 
 591 F.2d at 535. In the absence of an indictment against the Church, the question arises whether the Church would ever have an alternative means — including an opportunity to appeal — of seeking the return of its documents, since the normal procedure of seeking return by a motion in a pending criminal proceeding might not be available.
 

 The Ninth Circuit cited
 
 United States v. Ryan,
 
 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), in which the Court recognized an exception to the rule,
 
 see DiBella v. United States, supra,
 
 of not disturbing ongoing criminal proceedings with interlocutory appeals for a limited class of cases where denial of immediate review would render impossible any appellate review of an individual’s claims for return of seized property. 591 F.2d at 536. Denial of review when there is no criminal prosecution pending against the moving party could mean that the Government might retain indefinitely the property without any opportunity for the movant to assert on appeal his right to possession. 402 U.S. at 533, 91 S.Ct. at 1582. Obviously concerned about the impact of
 
 Ryan
 
 on a possible future appeal of Judge Lucas’ decision, Judge Duniway concluded by stating that:
 

 Our decision that the order appealed from is not appealable is not free from doubt, for the reasons stated by Mr. Justice Brennan in
 
 United States v. Ryan, supra.
 
 There must, at some time, be a remedy available to the Church for the return of its property, if it has been unlawfully taken. But the present appeal is not that remedy. We decide nothing more.
 

 Appeal dismissed.
 

 591 F.2d at 537.
 

 It could be argued that the Lucas decision will become appealable at some future date when the criminal litigation is completed, because at that point there would no longer be any concern about interfering with an ongoing criminal proceeding. Clearly, the concern with interruption of criminal litigation is one of the reasons why the immediate appeal from the 41(e) ruling was denied by the Ninth Circuit. The principal case that the Ninth Circuit relied upon was
 
 Di-Bella v. United States, supra,
 
 in which the Supreme Court held that a pre-indictment Rule 41(e) motion was not normally appeal-able because such an appeal may be used as “an instrument of harassment” that could seriously disrupt the criminal proceedings. 369 U.S. at 129, 82 S.Ct. at 659. After citing numerous cases following
 
 DiBella,
 
 the Ninth Circuit stated that:
 

 The principle that runs through all of these authorities is that an ongoing criminal proceeding is not to be interrupted by an appeal from an order denying suppression of evidence that may be used in that proceeding. This is such a case.
 

 591 F.2d at 536.
 

 However, the potential for disruption of pending criminal proceedings is not the only reason why pre-indictment Rule 41(e) motions are generally not appealable. The Supreme Court has consistently held that the appealability of a petition for suppression and/or the return of documents de
 
 *952
 
 pends on “its essential character and the circumstances under which it is made,”
 
 i.e.,
 
 whether the proceeding is “independent” or “merely a step in the trial of the criminal ease.”
 
 See DiBella v. United States, supra,
 
 369 U.S. at 129-31, 82 S.Ct. at 659-660;
 
 Carroll v. United States,
 
 354 U.S. 394, 404 & n.17, 77 S.Ct. 1332, 1338 & n.17, 1 L.Ed.2d 1442 (1957);
 
 United States v. Wallace & Tiernan Co., supra,
 
 336 U.S. at 802, 69 S.Ct. at 829;
 
 Cogen v. United States,
 
 278 U.S. 221, 225, 49 S.Ct. 118, 119, 73 L.Ed. 275 (1929). The Court in
 
 DiBella
 
 characterized as “truly interlocutory” pre-indictment Rule 41(e) motions directed at the suppression of evidence, and noted that the filing of such a motion at a very early stage of the criminal proceedings does not by itself “transmute the ensuing evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability,” let alone for issue preclusion purposes. 369 U.S. at 131, 82 S.Ct. at 660.
 

 In examining the character of a Rule 41(e) proceeding to determine if it is appeal-able, the
 
 DiBella
 
 Court focused on two criteria. The Court held that:
 

 Only if the motion is solely for the return of property and is in no way tied to a criminal prosecution
 
 in esse
 
 against the movant can the proceedings be regarded as independent.
 

 369 U.S. at 131-32, 82 S.Ct. at 660. The Ninth Circuit in
 
 Church of Scientology v. United States, supra,
 
 quoted this language, and several decisions have interpreted it literally to require dismissal of an appeal if there was
 
 any
 
 attempt in the motion to suppress evidence or
 
 any
 
 connection with a pending criminal proceeding, including a grand jury investigation.
 
 See, e.g., Meier v. Keller,
 
 521 F.2d 548, 556 (9th Cir. 1975),
 
 cert. denied,
 
 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976);
 
 Parrish v. United States,
 
 376 F.2d 601, 603 (4th Cir. 1967) (Boreman, J., concurring);
 
 Hill v. United States,
 
 346 F.2d 175, 178 (9th Cir.),
 
 cert. denied,
 
 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965).
 
 [14]
 
 Other authorities suggest that an appellate court may be less strict about requiring that the 41(e) action be absolutely separate from any criminal proceedings. But these authorities also require dismissal of an appeal from a Rule 41(e) decision where suppression was the primary if not the exclusive objective of the action.
 
 See Carroll v. United States, supra,
 
 354 U.S. at 404 & n.17, 77 S.Ct. at 1338 & n.17;
 
 Cogen v. United States, supra,
 
 278 U.S. at 228, 49 S.Ct. at 120;
 
 Dudley v. United States,
 
 427 F.2d 1140, 1141 (5th Cir. 1970).
 

 There can be little doubt that the suppression objective and the relationship to the pending criminal proceedings in the District of Columbia had a pervasive effect on the conduct of the Rule 41(e) litigation. As the Ninth Circuit stated in dismissing the first appeal,
 

 The petition or motion here did not and does not seek only the return of the property. It expressly seeks suppression of evidence, and is avowedly aimed at suppressing evidence in grand jury, extradition, and other criminal proceedings.
 

 Church of Scientology v. United States, supra,
 
 591 F.2d at 537. The court had earlier indicated that:
 

 Throughout the proceedings in the District Court in the case at bar, the Church has made it clear that the principal reason for its motion has been and is to prevent the use of any of the seized papers for the purpose of obtaining indict
 
 *953
 
 ments against either the Church or its officials or employees.
 

 Id.
 
 at 534.
 
 [15]
 
 Because of the suppression objective and the close connection with the pending criminal proceedings in the District of Columbia, the court believes that the Church’s 41(e) motion is not a sufficiently “independent” proceeding to be appealable or capable of collateral estoppel effect in the present action.
 
 [16]
 

 Finally, it may be argued that the possible unavailability of an alternative remedy, permitting appeal, for the return of the Church’s documents requires that an appeal of Judge Lucas’ decision someday be permitted.
 
 See United States v. Ryan, supra.
 
 However, the court believes that a decision of the D.C. Circuit last year substantially lessens the basis for the Ninth Circuit’s concern about the availability of an alternative remedy.
 

 In appeals from Judge Richey’s denial of several post-trial motions by the Church, the D.C. Circuit ruled that the district court had ancillary jurisdiction to entertain the Church’s motion for return of property, even though it was not a party to the criminal proceedings.
 
 See United States v. Hubbard,
 
 650 F.2d 293 at 307, 310 (D.C.Cir. 1980). The court vacated and remanded Judge Richey’s decision to make public all the documents seized, whether or not used in the criminal litigation,
 
 id.
 
 at 325, and in a supplemental opinion filed February 9, 1981, ordered most of the documents to remain sealed based on the “privacy” interests of the Church. In the course of its opinion the D.C. Circuit appeared to assume that the Church would be entitled to return of the documents, regardless of the validity or invalidity of the underlying search and seizure, upon bringing a motion in the district court as soon as the evidentiary utility of all of the documents is exhausted.
 
 See id.
 
 at 302, 310.
 

 C.
 
 Additional Problems
 

 The Lucas decision does not appear to satisfy two additional prerequisites for invoking collateral estoppel. First, it appears that the Church’s contentions that the scope of the search went far beyond the terms and geographic confines of the warrant were not “actually litigated.”
 
 See
 
 IB Moore’s Federal Practice,
 
 supra.
 
 Although the 41(e) hearings were continued for several months in order to permit the Church to prepare its evidence on these issues, the Church introduced no such evidence. Judge Lucas denied the Church’s request for a further continuance, observing that the Church had “abandoned” its prior conten
 
 *954
 
 tions and unveiled a “completely new theory” based upon a failure to minimize the intrusion. Lucas decision at 7-8, 24 n.10. Given the extensive evidence later introduced in support of the suppression motion before Judge Richey regarding the number of documents seized beyond the terms and geographic confines of the warrant, it would be unfair to preclude plaintiff from raising these issues here based upon a ruling on which no evidence was introduced.
 

 Second, by virtue of the nature of 41(e) proceedings, Plaintiff does not appear to have had a “full and fair opportunity” to litigate its Fourth Amendment contentions before Judge Lucas, an opportunity which the Supreme Court has repeatedly emphasized in recent years.
 
 See, e.g., Standefer v. United States, supra,
 
 447 U.S. at 22, 100 S.Ct. at 2007 (1980);
 
 Montana v. United States,
 
 440 U.S. 147, at 164, 99 S.Ct. 970, at 979, 59 L.Ed.2d 210 (1979);
 
 Parklane Hosiery Co. v. Shore,
 
 439 U.S. 320, at 332, 99 S.Ct. 644, at 652, 58 L.Ed.2d 549 (1979). Plaintiff’s Fourth Amendment claims were litigated far less extensively before Judge Lucas than they were before Judge Richey. In the 41(e) action before Judge Lucas approximately 12 FBI agents and three members of the Church testified in the course of several days of hearings on the execution of the search. The suppression hearing before Judge Richey covered six full weeks, divided between Washington, D.C., and Los Angeles, and the transcript is over 8,000 pages long. The Scientology defendants called 5 witnesses and introduced 701 exhibits; they presented to Judge Richey two major studies of the number and variety of documents seized outside of the warrant and the plain view exception.
 
 United States v. Hubbard, supra,
 
 493 F.Supp. at 233-34.
 

 By contrast, the Church in the 41(e) action conducted no discovery, even though it was a civil action, as Judge Lucas ruled initially that there was no authority for discovery under Rule 41(e), and the Church made no subsequent attempt to pursue discovery. Lucas decision at 26 n.12. The absence of litigation over the extent of documents seized outside the warrant and the absence of an opportunity to appeal also preclude a finding that the Church’s Fourth Amendment contentions were “fully and fairly” litigated in the 41(e) proceeding.
 
 [17]
 

 V. COLLATERAL ESTOPPEL EFFECT OF THE RICHEY DECISION
 

 The nine Scientology defendants vigorously and extensively litigated their Fourth Amendment contentions in a suppression motion before Judge Richey in the District of Columbia. The court rejected these arguments, finding that “[ojverall, the FBI agents who executed the warrants at issue in this case performed a very difficult job in a most reasonable manner.”
 
 United States v. Hubbard, supra,
 
 493 F.Supp. at 234. In reaching its ultimate conclusion of reasonableness, the court found that the agents had adequate preparation and supervision for the searches, did not use excessive force, did not exceed the geographical bounds of the warrant, and did not seize an unreasonable number of documents outside of the terms of the warrant and not within the “plain view” exception to the warrant requirement.
 
 Id.
 
 at 219-34.
 

 Plaintiff offers numerous arguments against the use of Judge Richey’s ruling on the suppression motion as collateral estoppel. It places primary emphasis on asserting the absence of two essential elements of collateral estoppel: 1) lack of sufficient
 
 *955
 
 identity of the Scientology defendants and plaintiff, one of several assertedly “different” and “independent” churches of the Scientology faith; and 2) that Judge Richey’s findings of no Fourth Amendment violation are not “essential to the judgment” in the District of Columbia criminal action. Although the court finds little merit in plaintiff’s other contentions,
 
 [18]
 
 the court agrees with the Church that its two primary arguments preclude the Richey decision from having any preclusive effect in the present action.
 

 A.
 
 Identity of Parties
 

 Defendants set forth two theories for binding the Church even though it was not a party to the criminal proceedings in the District of Columbia:
 

 1) that the Church behind the scenes effectively controlled the Scientology defendants’ conduct of the litigation,
 
 see Montana v. United States,
 
 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); and
 

 2) that a sufficient identity of interests exists between the California Church and the nine Scientology defendants, many of whom at the time of the searches and their trial were top officials of the Church, to bring the Church in privity with them. The court believes that defendants have failed to carry their burden on both theories, each of which involves significant factual issues.
 

 1.
 
 Control by a nonparty
 

 Nonparties may be bound to the results of a prior litigation in which they had a direct financial or proprietary interest and over which they assumed a sufficient degree of control and participation.
 
 Montana v. United States, supra,
 
 440 U.S. at 154-55 & n., 99 S.Ct. at 974 & n. (control theory as analytically distinct from privity); Restatement (Second) of Judgments § 83 (Tentative Draft No. 2, 1975); IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.411[6]. Exercise of control is a question of fact to be proved affirmatively by the party invoking the conclusive forces of the judgment.
 
 Id.
 
 at 1566-67.
 

 The Government defendants assert that “[i]t is logical to assume” that the Church paid for the attorney’s fees and the costs of defending its officers and members before Judge Richey, and that the Church had significant influence on the way in which their defense was conducted. They note that many of the nine Scientology defendants were prominent decisionmakers in the Church as a whole, including Mary Sue Hubbard, who is the wife of the founder of the Church of Scientology, Ronald Hubbard, and its “Commodore Staff Guardian,” and Henning Heldt, who has been described by his counsel as “the highest administrative official of the Church of Scientology in
 
 *956
 
 the United States.” The Government defendants also request the court to infer control of the litigation by the Church because certain of the large contingent of attorneys for the nine Scientology defendants have also represented either the California or Founding Churches of Scientology in related proceedings not including the present action.
 

 The court is not willing to entertain such assumptions. Defendants have made no real effort to establish with probative evidence that the Church had a sufficient “laboring oar” in the criminal proceeding to activate principles of estoppel,
 
 see Montana
 
 v.
 
 United States, supra,
 
 440 U.S. at 155, 99 S.Ct. at 974, and thus the control theory for binding the Church to the ruling on the suppression motion must be denied for lack of proof.
 

 2.
 
 Privity
 

 Issue preclusion has long been available where the party against whom the prior decision is asserted is not identical to the losing party in the prior action, but nevertheless has a sufficient identity with that party to be deemed its “privy”.
 
 See, e.g., Parklane Hosiery Co. v. Shore,
 
 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Privity for estoppel purposes is a creature of particular circumstances which may be described by a variety of terms, including “substantial identity,”
 
 see Chicago, R. I. & P. Railway Co. v. Schendel,
 
 270 U.S. 611, 618, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1927), and status as a “virtual representative,”
 
 see Performance Plus Fund v. Winfield & Co.,
 
 443 F.Supp. 1188, 1191 (N.D.Cal.1977)., Whatever the label, the fundamental issue is whether the party against whom estoppel is asserted has a sufficient identity of interests with the losing litigant in the prior suit to make the assertion of judicial finality consistent with fairness to all litigants involved. The question is factual, and one of substance, not form.
 
 Expert Electric, Inc. v. Levine,
 
 554 F.2d 1227,1233 (2d Cir. 1977);
 
 Aerojet General Corp. v. Askew,
 
 511 F.2d 710, 719 (5th Cir.),
 
 cert. denied,
 
 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).
 

 The privity issue in this case is a difficult one because the Ninth Circuit’s opinion in
 
 Church of Scientology v. United States, supra,
 
 591 F.2d at 537, and the position taken by the Scientology defendants and the Church in documents filed in other actions which the parties have inserted into the record in this case, do contain language suggesting that there might be an identity of interests between plaintiff and the nine Scientology defendants. Curiously, however, after the initial hearing on the present motion, the Government defendants explicitly abandoned their assertion of privity in favor of exclusive reliance on the
 
 Montana v. United States, supra,
 
 theory of control by a nonparty. In response to the Court’s question regarding the application of legal precedents to the privity issue,
 
 see
 
 Minute Order of November 12, 1980, the defendants argued that “the test for use of collateral estoppel is not privity” but rather whether the party to be estopped had a sufficient “laboring oar” in the prior suit. Defendants’ Memorandum of January 14, 1981, at 7. As a result, the court declines to find privity on the present motion because defendants have failed to carry their burden as moving parties of proving that the ties between the California Church and the Scientology defendants are sufficient to meet the legal standards for privity.
 

 A finding of privity in the circumstances of this case would be a novel result for which the court has found no analagous precedent. Many cases hold that as a prerequisite for privity the party in the prior litigation must have express or implied authority to represent the interests of the party to be bound.
 
 See, e.g., Ellentuck v. Klein,
 
 570 F.2d 414, 425 (2d Cir. 1978); IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.411[1], at 1253-54 & n.14. The Government defendants have not established the existence of such authority, nor have they shown that the due process requirements of notice and full and fair opportunity to litigate were afforded the Church through the defendants in the criminal litigation.
 
 See Performance Plus Fund v. Winfield & Co., supra,
 
 443 F.Supp. at 1191; IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.411[1], at 1252.
 
 *957
 
 Nor have defendants attempted to prove the extent and nature of any “direct” interest the Church itself might have had in the proceedings before Judge Richey.
 
 See Davis v. Eide,
 
 439 F.2d 1077 (9th Cir. 1971) (findings for defendant in prior criminal action on consent to entry and probable cause for arrest issues could not be asserted against police officers in subsequent civil rights action for lack of privity because officers had no measure of control over criminal proceedings and had no “direct individual personal interest” in its outcome).
 

 Furthermore, Judge Byrne has ruled in this case that the Church has standing to seek monetary damages only on its own behalf, and not on behalf of its members. Minute Order of July 21, 1980;
 
 see Hunt v. Washington State Apple Advertising Comm’n,
 
 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). This ruling suggests that the Church is a jural entity distinct from its members, which is a key factor in determining whether or not privity exists.
 
 See, e.g.,
 
 Restatement (Second) of Judgments § 110 (Tentative Draft No. 4, 1977) (unincorporated associations);
 
 id.
 
 § 108, comment a (judgment in action to which corporation is a party does not generally bind or redound to benefit of shareholders, directors, or officers since corporation is for most purposes treated as a distinct jural person). Defendants have not persuasively responded to plaintiff’s assertion that, as in the corporate context, the Church and its officers cannot be deemed to be in privity in the absence of an “alter ego” relationship that has not been demonstrated on the present record.
 
 See, e.g., Dudley v. Smith,
 
 504 F.2d 979, 982 (5th Cir. 1974).
 

 B.
 
 Not Essential to the Judgment
 

 Plaintiff also argues that Judge Richey’s findings cannot preclude relitigation here of its Fourth Amendment claims because those findings fail to meet the “essential to the judgment” requirement for issue preclusion.
 
 See Hoag v. New Jersey,
 
 356 U.S. 464, 470, 78 S.Ct. 829, 833, 2 L.Ed.2d 913 (1958);
 
 Segal v. American Telephone & Telegraph Co.,
 
 606 F.2d 842, 845 n.2 (9th Cir. 1979). The court agrees, although its reasoning has changed in light of the D.C. Circuit’s affirmance of the convictions of the nine Scientology defendants in a per curiam opinion issued October 2, 1981.
 

 Plaintiff points out that Judge Richey’s rulings on the merits of the Scientology defendants’ Fourth Amendment contentions were not the sole bases for his denial of the motion to suppress. The defendants did not make the traditional argument that the particular evidence to be used against them at trial was unlawfully seized and therefore should be suppressed under the exclusionary rule.
 
 See Stone v. Powell,
 
 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Judge Richey noted that defendants made very little, if any, effort to challenge directly as not described in the valid warrant and therefore improperly seized any of the 201 documents the prosecution had earmarked for use in its case-in-chief.
 
 United States v. Hubbard, supra,
 
 493 F.Supp. at 221, 234. Thus, defendants’ only theory for suppressing the 201 case-in-chief documents was to argue that the Los Angeles searches went so far beyond permissible bounds as to constitute a “general” or “exploratory” search which required the exclusion of
 
 all
 
 documents seized therein.
 
 Id.
 
 at 221-22.
 

 After extensive analysis of the caselaw, the court seemingly reached two legal conclusions which “convincingly undermined” defendants’ general search theory for total suppression.
 
 Id.
 
 at 213. Each provided a sufficient basis for denial of the motion to suppress the 201 documents without
 
 any
 
 factual inquiry into the lawfulness of the execution of the Los Angeles warrants. First, the court ruled that only four of the nine Scientology defendants had standing to assert their Fourth Amendment rights against the search, and that the rights of the four were limited to evidence to be used against them which was seized from their own respective offices.
 
 Id.
 
 at 215. Thus, because of the limited scope of defendants’ “reasonable expectation of privacy” under
 
 Rakas v. Illinois,
 
 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the court permitted only a very small percentage of the docu
 
 *958
 
 ments seized from over 40 offices and other areas to be subject to challenge in the suppression motion, the consequence of which would apparently be to impair significantly defendants' efforts to argue that the searches as a whole were unreasonable.
 

 Second, the court appeared to reject defendants’ legal theory for suppression of the only evidence at issue, the lawfully seized case-in-chief documents. The court carefully distinguished all five cases which the Scientology defendants cited in support of their theory for total suppression. 493 F.Supp. at 222-24. Judge Richey concluded, after citing a number of cases contrary to defendants’ position, that even the cases relied upon by the defendants show that “where the warrant is valid, and severability [of the validly and invalidly seized items] is possible, only material which has been illegally seized is suppressed.”
 
 Id.
 
 at 224.
 

 However, the court went on to cite two district court cases not relied upon by defendants which suggest, in dicta, that “at some point an entire search may become so unreasonable that its unreasonableness infects the seizure of each and every item asported.”
 
 Id.
 
 Thus, despite the court’s prior analysis of the standing and scope of exclusionary rule issues, it undertook to examine at length “the reasonableness of the entire search to be completely certain that justice is done in this case.”
 
 Id.
 
 In fact, the court’s analysis of the facts went beyond what was called for by the theory of the two district court cases it cited and defendants’ theory for total suppression that the search and seizure were so unreasonable as to be a “general search” in total disregard of the warrant. The court applied the general “reasonableness” standard to the defendants’ specific Fourth Amendment objections to the searches,
 
 id.
 
 at 225, rejecting each one with a finding that the Government agents acted reasonably and in good faith.
 
 Id.
 
 at 228, 231, 234. The court framed its conclusions as broadly as possible. It concluded not only that the search was not “general” or “exploratory,” but that there was “no illegality in the actions of the government agents who executed the warrants at issue.”
 
 Id.
 
 at 211.
 

 This court by its order of June 23, 1981, denied the Government defendants’ motion with respect to the assertion of the Richey decision as collateral estoppel because of their failure to establish sufficient identity of parties and because the court believed that Judge Richey’s findings of no Fourth Amendment violations were not essential to his denial of the suppression motion. If correct, the alternative bases for the denial of the motion — standing and the denial or severely limited scope of the theory for total suppression, neither of which are or could be relevant to this action — rendered immaterial Judge Richey’s broad factual findings. This court therefore declined to give preclusive effect to those findings because they appeared to have some of the characteristics of dicta, including the substantial risk that appellate review of those particular findings could not be obtained.
 
 See
 
 Restatement (Second) of Judgments § 68, comment i (Tentative Draft No. 4, 1977);
 
 Stebbins v. Keystone Insurance Co.,
 
 481 F.2d 501, 507 (D.C.Cir.1973);
 
 Halpern v. Schwartz,
 
 426 F.2d 102 (2d Cir. 1970).
 
 But see
 
 IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.443[5], at 3921-22;
 
 Williams v. Ward,
 
 556 F.2d 1143, 1154 (2d Cir. 1977).
 

 The court delayed issuance of the present opinion pending resolution of the Scientology defendants’ appeal in the D.C. Circuit. The appellate court’s opinion affirming the district court has substantiated this court’s above analysis and provided a clearer, although slightly modified, basis for deeming not essential to the judgment Judge Richey’s findings on the reasonableness of the Los Angeles searches.
 

 The D.C. Circuit affirmed the district court’s denial of the suppression motion “by way of a somewhat different rationale.”
 
 United States v. Heldt,
 
 668 F.2d at 1269 (D.C.Cir. 1981). It found the lower court’s resolution of the standing issue “unclear” but did not itself appear to resolve the difficult issue of whether the allegations of a general search can be based, even in part, upon evidence that the agents rummaged at will in areas
 
 *959
 
 outside of the few personal offices as to which certain of the defendants had standing.
 
 Id.
 
 at 1258 n.28. The court merely concluded that “the district court properly considered the', totality of circumstances surrounding the search of thfe two buildings.”
 

 The D.C. Circuit also did not limit the exclusionary rule to preclude defendants from asserting their theory that a general search justified the remedy of total suppression. However, in the course of ruling on this issue, the court made clear how extreme a violation of defendants’ Fourth Amendment rights had to be before the “drastic remedy” of total suppression could be invoked:
 

 We recognize that in some cases a flagrant disregard for the limitations in a warrant might transform an otherwise valid search into a general one, thereby requiring the entire fruits of the search to be suppressed. [Citations omitted]. If in this case law enforcement officers had conducted a document search as if no limiting warrant existed, rummaging at will among defendants’ offices and files, then the mere existence of a valid — but practically irrelevant — warrant for certain specified documents would not be determinative of whether the search was so unreasonable as to require suppression of everything seized.
 

 Id.
 
 at 1259. Absent such “flagrant disregard” for the"', terms of the warrant or the limits on the use of force, the court found the appropriate rule to be that the seizure of “some items” outside the scope of a valid warrant has no effect on the admissibility of contemporaneously seized items which do fall within the warrant.
 
 Id.
 
 at 1259. Thus, the court held that the defendants’ motion to suppress the 201 casein-chief documents could succeed only if the defendants proved such a “flagrant disregard” for their Fourth Amendment rights. The appellate court’s entire analysis of the record on the suppression motion was focused upon whether this extreme form of Fourth Amendment violation has occurred. The court on several occasions found “disturbing” evidence of some possible violations, but found the evidence not of sufficient magnitude to justify the extraordinary remedy of excluding the otherwise lawfully seized case-in-chief documents.
 
 Id.
 
 at 1260 n.33, 1261-62, 1263 n.49,
 
 id.
 
 at 1288-89 (Wald, Jr., concurring in part and concurring in the result). For example, the court recognized “the possibility that many documents were improperly seized under the plain view doctrine,” but nevertheless concluded that the remedy of total suppression was not required.
 
 Id.
 
 at 1268. As the court explained:
 

 We must emphasize at this point . .. that our concern with the agents’ obedience to the limitations of the warrant relates solely to determining whether a violation of such egregious magnitude occurred that
 
 all
 
 fruits of the search must be suppressed .... If
 
 particular documents
 
 seized under the plain view exception had been admitted and the admissibility of those documents had been put in issue before us, an entirely different analysis would be required. In conclusion, despite the possibility that some (unspecified) documents seized under plain view failed the incriminating character requirement [of the plain view doctrine], we hold that the searches of Fifield Manor and Cedars-Sinai [the Church premises in Los Angeles] were not so unreasonable that total suppression is required.
 

 Id.
 
 at 1269 (emphasis by the court).
 

 Because this is a civil action, the flagrant violation requirement for use of the exclusionary rule remedy of total suppression is not applicable. As in the normal criminal suppression motion challenging the legality of the seizure of particular items of evidence, the fundamental inquiry in the present action is whether or not the search and seizure is “reasonable under all the circumstances.”
 
 See United States v. Chadwick,
 
 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). As a result of the appellate court’s holding, the ultimate issue decided in the suppression motion was limited to whether a “flagrant” or “egregious” Fourth Amendment violation occurred, which is not “in substance the same” as the
 
 *960
 
 issue of reasonableness in the present
 
 Bivens
 
 action.
 
 See Montana v. United States,
 
 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Therefore, the Church’s Fourth Amendment contentions are not properly precluded by the holding of the appellate court.
 
 [19]
 

 The D.C. Circuit opinion did not expressly disapprove Judge Richey’s broad findings that the Los Angeles searches were completely lawful. In fact, the appellate court, in an initial summary of its conclusions that has no support at all by virtue of the holding it repeatedly emphasized in its actual analysis of the suppression motion, stated that the execution of the Los Angeles warrants “satisfied the ultimate constitutional requirement of reasonableness.”
 
 Id.
 
 668 F.2d at 1254. Nevertheless, the “flagrant disregard” standard set forth by .the appellate court clarifies the fact that in ruling on the reasonableness and good faith' of the Government agents, the district court went beyond the necessities of the case. It is well-settled that findings which are immaterial, collateral or incidental to the prior judgment cannot have preclusive effect in subsequent litigation.
 
 See
 
 IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.443[5], at 3919;
 
 Memorex Corp. v. International Business Machines Corp.,
 
 555 F.2d 1379, 1384 (9th Cir. 1977).
 

 Judge Richey’s findings beyond the application of the flagrant disregard standard cannot bar plaintiff’s
 
 Bivens
 
 claims for the further reason that the appellate court did not reach those specific findings in affirming the ruling on the suppression motion. The appellate decision has a critical bearing on the continued force of a final judgment as res judicata or collateral estoppel. Once an appeal is resolved, the alternative grounds raised on appeal but not decided upon by the appellate court are not “essential to the judgment,” IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.443[5], at 3921 n.10; Restatement (Second) of Judgments § 68, comment o (Tentative Draft No. 4, 1977);
 
 Stebbins v. Keystone Insurance Co., supra,
 
 481 F.2d at 507 n.13;
 
 International Refugee Organization v. Republic S.S. Corp.,
 
 189 F.2d 858, 862 (4th Cir. 1951), because appellate review of the grounds omitted from the appellate court decision has not been available to the litigant (or his privy) against whom the omitted ground is asserted. 18 Wright, Miller & Cooper, Federal Practice & Procedure,
 
 supra,
 
 § 4421, at 205-06 & n.25.
 

 VI. SERVICE OF PROCESS
 

 Defendants Varley and Chef alo urge that the complaint be dismissed against them as individuals for insufficient service of process under Rule 12(b)(5). Plaintiff responds that these defendants have waived their personal defenses by pri- or participation in this action combined with a failure to assert the defenses in a previous Rule 12(b) motion. The court agrees.
 

 The United States Attorney for the Central District of California, the only counsel of record who has appeared for any of the 23 original defendants in this action, filed on June 23, 1980, a Rule 12(b)(6) motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted. The motion did not assert the personal defenses of the two defendants, now raised for the first time in this action. Under Rules 12(g) and 12(g)(1),
 
 [20]
 
 
 *961
 
 these defenses are therefore permanently waived since they were omitted from a previous 12(b) motion. 5 Wright & Miller,
 
 supra,
 
 § 1391.
 

 Defendants Varley and Chefalo raise two arguments against waiver, but neither is persuasive. First, they assert that the filing of a very different amended complaint by plaintiff revives their right to raise Rule 12(b) waivable defenses. However, Rule 12(g) specifically rejects this possibility where, as here, the grounds for the objections were “available” at the time the previous motion was filed.
 
 See, e.g., Rowley v. McMillan,
 
 502 F.2d 1326, 1332-33 (4th Cir. 1974); 2A Moore’s Federal Practice,
 
 supra,
 
 ¶ 12.22, at 2442-43.
 

 Second; defendants argue that their personal defenses were not waived by the prior motion to dismiss because they were not parties to that motion. They claim that the defenses were effectively “reserved” by the notation in the June 23 motion that it was brought on behalf of only “those defendants herein who have been properly served with process.” Nothing in the Federal Rules requires multiple defendants who are represented by different counsel from the outset of a case to consolidate all of their Rule 12(b) objections into one motion. However, in view of the U.S. Attorney’s previous and contemporaneous representation of all defendants, the court will not permit defendants Varley and Chefalo to circumvent the consolidation requirements of Rules 12(g) and 12(h)(1) by purporting to have been excluded from representation in connection with the June 23 motion.
 

 Counsel for defendants concedes that at a February 15, 1978, hearing on a motion to serve interrogatories, he told the court that he had received authority to represent all the defendants except for Frank Kelly, who was and still remains an unknown person.
 
 See
 
 Defendants’ Brief of December 8, 1980, at 24. Counsel acted on behalf of defendants Varley and Chefalo, among others, by filing several motions prior to the June 23 motion to dismiss.
 
 [21]
 
 Counsel now points to no legitimate reason — for example, potentially differing interests among defendants — why it could not have represented the two defendants in connection with the June 23 motion. Under these circumstances to permit defendants now to assert insufficient service of process would run directly counter to the central objectives of Rules 12(g) and 12(h)(1) — to force litigants to exercise great diligence in challenging personal service at the earliest possible time, and to deter defendants from the dilatory tactic of filing a series of 12(b) motions.
 
 See Wright & Miller, supra,
 
 § 1391, at 855; 2A Moore’s Federal Practice,
 
 supra,
 
 ¶ 12.22, at 2440.
 

 VII. SOVEREIGN IMMUNITY
 

 The United States Attorney on February 9, 1981, moved to dismiss the United States Department of Justice under Fed.R.Civ.P. 12(b)(1) on the ground that the court lacks subject matter jurisdiction over it because it cannot be sued
 
 eo nomine
 
 under the doctrine of sovereign immunity.
 
 See Blackmar v. Guerre,
 
 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952). It is well-established that suits to enjoin the United States or its agencies, like damage suits, cannot be maintained unless Congress first consents by enacting a waiver of sov
 
 *962
 
 ereign immunity. 14 Wright & Miller,
 
 supra,
 
 § 3655. The Justice Department contended that no such waiver was applicable here, but at the March 2, 1981, hearing, the court denied the motion to dismiss based upon the waiver of sovereign immunity for nonmonetary relief contained in the 1976 amendments to 5 U.S.C. §§ 702 and 703. Because the issue had not yet been adequately briefed, the Department moved to reconsider. After receiving a series of memoranda on the issue, the court once again denies the Department’s motion to dismiss.
 

 The Department, without any reference to the legislative history of the 1976 amendments or the leading cases interpreting them, argues that the waiver of sovereign immunity contained in 5 U.S.C. § 702 applies only to actions which are cognizable under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq. Section 702, which is part of the APA, now reads in relevant part:
 

 A person suffering legal
 
 wrong
 
 because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.
 

 The Department, contending that the “agency action” language in section 702 limits the scope of the waiver, relies on 5 U.S.C. •§ 704, which states that “agency action” is reviewable under the APA only if it is “made reviewable by statute” or “final agency action for which there is no other adequate remedy in a court.” Pointing to the definition of “agency action” set forth in 5 U.S.C. § 551(13),
 
 [22]
 
 the Department accurately observes that the actions of the Department and its agents which are alleged in the complaint are not made reviewable by any section of the APA, nor are they “final agency action” within the meaning of section 704.
 

 But the fact that the APA does not provide a statutory basis for review of the allegations against the Department is not the end of the analysis. The waiver of sovereign immunity contained in section 702 is not by its terms limited to “agency action” reviewable under the APA. In
 
 Jaffee v. United States,
 
 592 F.2d 712 (3d Cir. 1979),
 
 cert. denied,
 
 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1980), the Third Circuit held that the section 702 waiver of sovereign immunity extended also to “nonstatutory” review of agency action sought under 28 U.S.C. § 1331. The court rejected, based upon an extensive review of the legislative history, an earlier decision,
 
 Watson v. Blumenthal,
 
 586 F.2d 925, 932 (2d Cir. 1978), in which the Second Circuit ruled that the section 702 waiver did apply generally to section 1331 suits. 592 F.2d at 718-19. As discussed in the House Report on P.L. 94-574, which amended section 702, “nonstatutory” review actions refer to those involving matters which arise “under the Constitution, Laws, or treaties of the United States” as provided in section 1331(a), but for which there is no special statute, regulatory in nature or contained in the APA itself, which authorizes review in federal court of that particular action. H.R.Rep. No.94-1656, 95th Cong., 2d Sess. at 5,
 
 reprinted in
 
 [1976] U.S.Code Cong. & Ad. News 6121, 6125 (hereinafter H.R.Rep.). The Report notes that actions by many of the older executive departments, including the Department of Justice, are subject to judicial review only through such “nonstatutory” suits under section 1331.
 
 Id.
 
 Plaintiff’s
 
 Bivens
 
 constitutional tort action is precisely such a nonstatutory review action
 
 *963
 
 covered by section 702 insofar as it seeks nonmonetary relief against the Department.
 

 The Ninth Circuit in
 
 Beller v. Middendorf,
 
 632 F.2d 788, 796-97 (9th Cir. 1980), recently approved the Third Circuit’s ruling in
 
 Jaffee.
 
 The Department cites the statement in
 
 Hill v. United States,
 
 571 F.2d 1098, 1102 n.2 (9th Cir. 1978), that section 702 waives sovereign immunity as to all nonmonetary claims against government agencies, officers or employees “covered by the Administrative Procedure Act,” and asserts that
 
 Beller v. Middendorf
 
 is in accord with this view. But the language in
 
 Hill
 
 is simply dicta since the court dismissed the case for failure to state a claim and not on grounds of sovereign immunity.
 
 Beller v. Middendorf
 
 does not specifically note the inconsistency of
 
 Jaffee
 
 with the
 
 Hill
 
 dictum, nor does it mention the critical distinction between actions reviewable under the APA and “nonstatutory” review actions. Nevertheless, the court in
 
 Beller v. Middendorf
 
 acknowledged the split of authority among the circuits as to whether section 702 constitutes a general waiver of sovereign immunity in section 1331 actions. It rejected the Second Circuit’s limitation of the section 702 waiver, and affirmed the district court’s determination that it had jurisdiction over the plaintiff’s claims for nonmonetary relief against the Secretary of the Navy in his official capacity. 632 F.2d at 797.
 

 To the extent that
 
 Beller v. Middendorf
 
 leaves any doubt about the applicability of section 702 to nonstatutory review actions under section 1331 for nonmonetary relief, the court holds that such application is compelled by the legislative history of the 1976 amendment. The House Report states that the amendment seeks to “facilitate nonstatutory judicial review of Federal administrative action . . .,” H.R.Rep.,
 
 supra,
 
 at 19, U.S.Code Cong. & Ad.News at 6140, and that “the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity.” H.R.Rep. at 9, U.S.Code Cong. & Ad.News at 6129. It is not surprising that every circuit other than the Second Circuit which has considered the issue has followed the
 
 Jaffee
 
 decision.
 
 See, e.g., Beller v. Middendorf, supra; Sheehan v. Army & Air Force Exchange Service,
 
 619 F.2d 1132, 1139 (5th Cir.1980);
 
 Collyard v. Washington Capitals,
 
 477 F.Supp. 1247, 1252-53 (D.Minn.1979).
 

 Section 702 itself does not address whether the Justice Department may be a proper party defendant in an action where sovereign immunity has been waived. That issue is treated in 5 U.S.C. § 703, which, as amended in 1976, provides in relevant part that
 

 If no special statutory review provision is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer.
 

 The House Report on P.L. 94-574 makes clear that section 703 permits the plaintiff in suits for nonstatutory review of administrative action to name as a defendant the agency or department itself.
 
 See
 
 H.R.Rep.,
 
 supra,
 
 at 3, 18, U¡S.Code Cong. & Ad.News at 6123, 6138. This intention is also implied by 28 U.S.C. § 1331(a), which, as amended in 1976, provides that the $10,000 amount in controversy requirement does not apply to actions under the section brought against “the United States,
 
 any agency thereof,
 
 or any officer or employee thereof in his official capacity” (emphasis added).
 
 [23]
 

 
 *964
 
 VIII. DISMISSAL OF THE DISSEMINATION CLAIM
 

 In its final two filings with the court, the Department also asserts that Paragraph 20 of the Third Amended Complaint is barred as to it by res judicata. In
 
 Church of Scientology of California v. United States Department of Justice,
 
 No. CV 78-3365-RF(Kx) (C.D.Cal. October 10, 1979), Judge David Williams dismissed with prejudice for lack of jurisdiction a complaint against the Department. The complaint, which was amended several times, sought relief from the Department for “selectively” leaking to the Los Angeles Times (which, along with two of its reporters, was dismissed as a defendant by a previous order) confidential information obtained in the Los Angeles searches in a deliberate attempt to create a “negative animus” toward the Church in the community and in the courts.
 

 The court finds the Department’s assertion of res judicata to be without merit. The cause of action asserted in Paragraph 20 of the present complaint asserts that the Department and several individual defendants disseminated the fruits of the search to private and governmental entities involved in litigation against the Church in an effort to interfere with the free exercise of the Scientology religion. The cause of action asserted in that paragraph is clearly not identical to that raised before Judge WilHams, and therefore res judicata does not apply. Neither does the doctrine of collateral estoppel bar litigation of Paragraph 20, since the subject matter of the prior complaint was quite different, and the Department failed to show that any of the issues previously decided are raised in Paragraph 20. In any case, because Judge Williams’ dismissal was not on the merits, it fails to satisfy the requirement that the issue asserted as estoppel have been “actually litigated.”
 
 See, e.g.,
 
 IB Wright, Miller & Cooper,
 
 supra,
 
 § 4436.
 

 CONCLUSION
 

 Defendants’ motions to dismiss are DENIED in all respects except that plaintiff’s Fifth and Ninth Amendment claims are stricken, as are the jurisdictional bases set forth in the complaint other than 28 U.S.C. § 1331.
 

 IT IS SO ORDERED.
 

 [1]
 

 . There were originally 22 individual defendants named, but on June 23, 1981, the court granted plaintiffs motion to dismiss with prejudice defendants Raymond Banoun and Henry Schuelke III, both of whom were allegedly involved with the Los Angeles searches while serving as Assistant United States Attorneys in the District of Columbia. Because these were
 
 *943
 
 the only two defendants which were asserted to be residing outside of this District, defendants’ argument that venue “may” be improper no longer requires consideration.
 

 [2]
 

 . Rule 41(e) of the Federal Rules of Criminal Procedure provides:
 

 A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated as a motion to suppress under Rule 12.
 

 [3]
 

 . The Fourth Amendment ot the U.S. Constitution provides:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 

 [4]
 

 . On remand, Judge Bryant held that the D.C. search was general and exploratory in violation of the Fourth Amendment and 18 U.S.C. § 2234, and therefore again ordered return of the documents seized in the District of Columbia and the destruction of all copies.
 
 In re Search Warrant Dated July 4, 1977,
 
 Misc.No. 77-0151 (D.D.C. August 24, 1979). On appeal by the Government, the D.C. Circuit again reversed, and upheld the constitutionality of the search as a whole. The court remanded to allow the Church to make a showing that particular documents may have been seized unlawfully.
 
 In re Search Warrant dated July 4,
 
 1977,667 F.2d 117 (D.C.Cir. 1981).
 

 [5]
 

 . The other two of the 11 individuals indicted by the grand jury resided in England and were not extradited in time to stand trial with the nine defendants before Judge Richey. These two defendants also filed motions to suppress which were denied for lack of standing by Judge Aubrey E. Robinson, Jr., in the District of Columbia federal court. On November 26, 1980, the two extradited defendants were convicted on nine counts of burglarizing Government offices.
 

 [6]
 

 . Seven of the nine were found guilty of conspiracy to obstruct justice; one was found guilty of conspiracy to obtain government documents illegally; and the other was found guilty of theft of government property.
 

 [7]
 

 . Plaintiff does not in the present complaint challenge the facial validity of the warrants used in the Los Angeles searches. Judge Byrne at the July 21, 1980, hearing on defendants’ motion to dismiss ordered the constitutional challenge to the validity of the warrants stricken from the Second Amended Complaint on the ground of collateral estoppel. The court gave preclusive effect to the D.C. Circuit decision upholding the District of Columbia warrant because the Los Angeles warrant was nearly identical.
 
 See In re Search Warrant Dated July 4, 1977, supra.
 

 [8]
 

 . Defendants are particularly critical of Paragraphs 7 through 11 of the Third Amended Complaint, which allege in very general language a wide-ranging plan, set in motion in the mid-1950’s by the Justice Department and other agencies of the federal government, to harass and destroy the Scientology religion. Defendants assert that these paragraphs are as clearly defective as were the lengthy “conspiracy” and “harassment” allegations set forth in the Second Amended Complaint.
 

 However, plaintiff indicates that it does not seek relief from the defendants for any period prior to 1977, and notes that the sole purpose of including Paragraphs 7 through 11 was to provide background information regarding the origin and nature of the “campaign” in which defendants allegedly participated by means of the Los Angeles searches. Plaintiff’s Memorandum of October 14, 1980, at 5 n.2. The court declines defendants’ invitation to strike Paragraphs 7 through 11 as irrelevant and inflammatory, but does intend, consistent with plaintiffs stipulation on the record at the hearing on January 15, 1981, to limit discovery regarding these paragraphs to only those indivictuals, documents, and activities which are reasonably calculated to lead to the discovery of evidence truly relevant to defendants’ actions, motivations and plans connected with the Los Angeles searches.
 
 See
 
 Fed.R.Civ.P. 26(b)(1).
 

 Since Paragraphs 7 through 11 do not, as interpreted by plaintiff, purport to state an independent cause of action upon which relief could be granted, the court need not address defendants’ statute of limitations argument.
 

 [9]
 

 . The Ninth Circuit authority on which the defendants rely provides no additional support for their position.
 
 Sherman v. Yakahi,
 
 549 F.2d 1287, 1290 (9th Cir. 1977), merely states that “conclusory allegations, unsupported by facts” have consistently been rejected as insufficient to state a claim under the Civil Rights Act.
 
 Accord, Kennedy v. H & M Landing, Inc.,
 
 529 F.2d 987, 989 (9th Cir. 1976). The court in
 
 Sherman
 
 applied the
 
 Conley v. Gibson, supra,
 
 analysis and in fact reversed in part the district court’s dismissal of the claim.
 

 [10]
 

 . The Fifth Amendment to the United States Constitution provides that no person shall “be deprived of life, liberty, or property, without due process of law,” and has been interpreted to incorporate the equal protection clause of the Fourteenth Amendment in suits against federal agencies and officers.
 
 Bolling v. Sharpe,
 
 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Ninth Amendment states that “The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.”
 

 [11]
 

 . The court notes that in both of these cases the prior decision was appealable, and thus the language suggesting that appealability is only a factor to be considered and not a prerequisite to collateral estoppel is dicta. In
 
 Lummus Co., supra,
 
 the court noted that the prior judgment had in fact been litigated on appeal, even though in the typical case the order entered would not have been appealable. 297 F.2d at 90. In
 
 Sherman, supra,
 
 the court recognized that an opportunity to appeal the prior decision “will one day materialize.” 247 F.Supp. at 270.
 

 [12]
 

 . The
 
 Standefer
 
 Court specifically refrained
 
 *950
 
 from ruling that the availability of appellate review is
 
 always
 
 an essential predicate of estoppel, citing
 
 Johnson Co. v. Wharton,
 
 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429 (1894), and IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.416[5]. 447 U.S. at 23 n.18, 100 S.Ct. at 2007 n.18. But the exceptions recognized in these authorities are not applicable here. In
 
 Johnson Co. v. Wharton,
 
 the plaintiff sought to preclude relitigation of the defense of noncoverage of a patent and license agreement in a second action against a licensee to recover royalties. The Court gave preclusive effect to the prior judgment of the circuit court, the original trier of fact, even though it had not been appealable to the Supreme Court because the jurisdictional amount required by statute was lacking. 152 U.S. at 261, 14 S.Ct. at 611.
 

 The
 
 Johnson Co. v. Wharton
 
 analysis is primarily applicable to claims of res judicata, involving causes of action that are essentially identical. IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.416[5], at 2301 (noting that in
 
 Johnson Co. v. Wharton
 
 the plaintiffs had split virtually identical claims into separate actions). Where only collateral estoppel and not res judicata may be asserted because the causes of action are not identical,
 
 see id.
 
 ¶ 0.405[3], a prior nonappealable judgment is conclusive as to issues previously litigated only if appeal of the second action is also not permitted by statute.
 
 Id.
 
 ¶ 0.416[6], at 2325-26. To reach a contrary result would frustrate legislative intent in providing a right of appeal in the second action.
 

 Thus, the
 
 Johnson Co.
 
 v.
 
 Wharton
 
 exception noted by the Court does not apply here, where the Lucas decision is asserted only as collateral estoppel and not res judicata, and where no statute precludes appeal from the prior determination or from a decision in this action.
 
 See also
 
 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4433, at 320-21 & n.39 (1981) (exception may apply where special factors may explain lack of appellate review). Defendants in the present action have not relied on the doctrine of res judicata for good reason. The causes of action in the two proceedings, although raising some of the same Fourth Amendment issues, are different in that 1) the Rule 41(e) motion concerned the legality of the seizure of particular documents, whereas the present action concerns the legality of the search and seizure operation as a whole; and 2) the defendant in the 41(e) action was the United States, and here defendants are alleged to be certain of the individual Government agents involved in the Los Angeles searches.
 

 [13]
 

 . Several other well-established rules of collateral estoppel highlight the importance of appealability. For example, a prior judgment is conclusive of only those issues whose determination supports the judgment, since the prevailing litigant does not generally have the opportunity or incentive to appeal issues adjudicated against it. IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.443[5], at 3922-23. Once an appeal of a decision resting on alternative grounds is decided, the judgment is conclusive of only those issues reached and affirmed by the appellate court.
 
 Id.
 
 at 3921.
 

 In addition, although concepts of “finality” are not precisely the same for collateral estoppel and appealability purposes, the two are “closely related.”
 
 Id.
 
 ¶ 0.416[3], at 2251. To the extent that they diverge, the finality requirement for appealability is generally easier to satisfy, as, for example, a number of interlocutory decisions may be appealed but may not be given preclusive effect in subsequent actions. See
 
 id.;
 
 Restatement (Second) of Judgments § 41 (Tentative Draft No. 1, 1973), comment b (finality for issue preclusion purposes resembles the more restrictive formulation of the concept of finality formerly used in connection with appellate review).
 

 [14]
 

 . Two Ninth Circuit decisions following
 
 DiBella
 
 indicate that the denial of a Rule 41(e) petition does not necessarily become appealable upon the termination of a pending criminal proceeding, the existence of which had previously required dismissal of an appeal. In
 
 Hill v. United States, supra,
 
 the court held that the denial of a 41(e) petition was not appealable even though there was no longer any pending criminal matter because a change in the law barred further prosecution of the moving party. The court ruled that the motion was interlocutory in character because it had been directed at suppressing evidence in any possible future prosecution.
 
 Id.
 
 at 177-78. In
 
 Goodman v. United States,
 
 369 F.2d 166 (9th Cir. 1966), the Ninth Circuit suggested that a proceeding for suppression and return of documents is independent and appealable only if “there is,
 
 and has been,
 
 no criminal case pending in any stage” to which it was closely tied.
 
 Id.
 
 at 168 (emphasis added).
 

 [15]
 

 . Plaintiff now contends that the Ninth Circuit’s characterization ■ of the 41(e) action is “inaccurate” in that the primary purpose of the Church was to prevent a further invasion of privacy by seeking return of its documents. Plaintiffs Memorandum of February 27, 1981, at 8-9. But the Church itself in its opening brief to the Ninth Circuit urged that mere return of the documents would not be a sufficient remedy, since only their suppression could prohibit the Government from making any use whatsoever of the documents or the information contained in them. Brief of the Church of Scientology of California,
 
 Church of Scientology v. United States, supra,
 
 at 65. Furthermore, Judge Lucas stated that
 

 As the Petitioner has a copy of the documents, the principal purpose of this action is to determine whether the Government will be free to use the documents in possible future criminal proceedings.
 

 Lucas decision at 3.
 

 [16]
 

 . This conclusion is further supported by an examination of the reasons for the
 
 DiBella
 
 criteria for appealability. Rulings on specific items of evidence tend to be “disjointed” in a preindictment Rule 41(e) proceeding because the legality of the search as to that evidence cannot truly be determined until the evidence in the case is sufficiently developed and organized to bring all relevant circumstances to light.
 
 DiBella v. United States, supra,
 
 369 U.S. at 129, 82 S.Ct. at 659. Permitting appeals of such proceedings would lead to a “truncated” and “premature and inadequate” discussion of admissibility by the appellate court.
 
 Id.
 
 at 129, 132, 82 S.Ct. at 659, 660. Important preliminary issues such as standing also might not receive proper focus.
 
 See Church of Scientology v. United States, supra,
 
 591 F.2d at 537 (“[suppression at the behest of the Church would be an abuse of Rule 41(e) [because it would benefit individuals who may not, in fact, have Fourth Amendment standing,
 
 see United States v. Hubbard, supra,
 
 493 F.Supp. at 215] and is an additional reason to deny appealability.”).
 

 [17]
 

 . The importance of the fullness and fairness of the litigation asserted as estoppel is accentuated by the fact that defendants to the present action were not parties to the 41(e) action. The doctrine of mutuality of estoppel once required that one who invokes the conclusive effect of a judgment have been either a party or a privy to the suit in which the judgment was rendered. IB Moore’s Federal Practice,
 
 supra,
 
 ¶ 0.412, at 1801. Although use of the mutuality doctrine in the federal courts has been eliminated,
 
 Allen v. McCurry,
 
 449 U.S. 90, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980), it remains proper to give greater weight to concerns about the fairness of using a prior decision as collateral estoppel where, as here, the party asserting estoppel was not a party to the prior action.
 
 See Standefer v. United States, supra,
 
 447 U.S. at 22-24, 100 S.Ct. at 2007-2008; Restatement (Second) of Judgments § 88 (Tentative Draft No. 3, 1976), comment b.
 

 [18]
 

 . Plaintiff’s assertion that the motion to sup-’ press was merely a “procedural step” in the litigation which cannot be accorded preclusive effect lacks merit because the denial of the suppression motion was incorporated in the final judgments of conviction. Plaintiffs contention that differences in procedure and rules of evidence justify a refusal to permit issue preclusion in a civil case based upon a criminal judgment is also unpersuasive, since numerous courts have used the denial of a criminal suppression motion prior to conviction as a bar to civil suits against police officers for violation of civil rights. See, e.g., Allen v. McCurry, supra, 101 S.Ct. at 414;
 
 Manis v. United States,
 
 467 F.Supp. 828 (E.D.Tenn. 1979).
 

 Plaintiff also urges that the Richey decision should not preclude the Church from relitigating any of the issues connected with the search and seizure because the allegations of bad faith and intent to interfere with First Amendment rights (see ¶¶ 12, 13 & 21) render the issues in the present suit fundamentally different from those litigated in the suppression motion. Plaintiff relies on
 
 Brubaker v. King,
 
 505 F.2d 534 (7th Cir. 1974), for the proposition that a constitutional claim may be asserted against an officer for acting in bad faith even though a prior decision has held that the conduct itself was lawful. In
 
 Brubaker,
 
 the court refused to dismiss a civil claim for unlawful arrest in spite of a magistrate’s finding of objective probable cause for arrest.
 
 Id.
 
 at 538 n.2. But in
 
 Allen v. McCurry, supra,
 
 the Supreme Court expressly disapproved of the result in
 
 Brubaker,
 
 stating that “a state court decision that the police acted legally cannot but foreclose a claim that they acted in bad faith.” Plaintiff’s addition of a bad faith gloss to its essentially Fourth (and thus not First) Amendment claims (which do not include, in the court’s opinion, Paragraphs 17, 18 and 20 of the Complaint) thus has no bearing on whether the Richey decision has collateral estoppel effect in the present action.
 

 [19]
 

 . Even the qualified immunity for “good faith” conduct which the Government defendants may later assert,
 
 see Butz v. Economou, supra,
 
 does not make the ultimate issues in the present action identical to the issues considered by the D.C. Circuit for two reasons. The level of proof that the D.C. Circuit required before the suppression motion could have been granted is clearly greater than the mere absence of good faith by the law enforcement officers involved.
 
 See
 
 at-. In any case, the burden of proving a good faith affirmative defense shifts to the Government defendants, whereas the burden of proving flagrant disregard for the warrant was entirely on the parties claiming a Fourth Amendment violation.
 

 [20]
 

 . Fed.R.Civ.P. 12(g) states that
 

 If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as pro
 
 *961
 
 vided in subdivision (h)(2) hereof on any of the grounds there stated.
 

 Rule 12(h)(2) excludes certain defenses from the consolidation requirement of Rule 12(g), but Rule 12(h)(1) specifies that the defense of insufficiency of service of process is waived if omitted from a motion in the circumstances described in subdivision (g).
 

 [21]
 

 . Represented by the U.S. Attorney, defendants Varley and Chefalo, along with other named defendants, filed opposition to plaintiffs motion to transfer on October 10, 1978, and on January 24, 1978, they filed opposition to plaintiffs motion to serve interrogatories.
 

 The hollowness of the U.S. Attorney’s vigorous effort to “reserve” the Rule 12(b) personal defenses is perhaps most graphically evidenced by the fact that the initial brief for the present motion again excludes from representation the “five named defendants [which originally included the now voluntarily dismissed defendants, Banoun and Schuelke] who have not been properly served,” even though the brief goes on to urge dismissal of these very defendants based on the personal defenses.
 

 [22]
 

 . Section 551(13) defines “agency action” as including “the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.”
 

 [23]
 

 . In light of the ruling on the coverage of the § 702 waiver, the court finds it unnecessary to rule upon plaintiffs additional contention that sovereign immunity does not bar suits for injunctive relief against federal agencies, even in the absence of a congressional waiver, where unconstitutional action is alleged. Of the cases which plaintiff cites for this proposition, only
 
 Wounded Knee Legal Defense/Offense Committee v. F.B.I.,
 
 507 F.2d 1281 (8th Cir. 1974), appears to be truly supportive. Most of the cases in this area distinguish between suits against individual federal officers in their official capacities and suits against the United States or the agencies themselves.
 
 See
 
 14 Wright & Miller,
 
 supra,
 
 § 3655. Under the legal fiction adopted in
 
 Larson v. Domestic and Foreign Commerce Corp.,
 
 337 U.S. 682, 69
 
 *964
 
 S.Ct. 1457, 93 L.Ed. 1628 (1949), courts have reasoned that sovereign immunity does not apply to actions seeking nonmonetary relief where the officer acted unconstitutionally, since such relief would not then “in effect” be “against the sovereign,” so long as the relief requested can be accomplished by merely ordering the cessation of the conduct, and need not require “affirmative action” by the sovereign or the disposition of unquestionably sovereign property.
 
 Id.
 
 at 691 n. 11, 69 S.Ct. at 1462 n.ll.
 

 Most authorities, including the Ninth Circuit, have not extended this doctrine to suits against federal agencies, and have required statutory waiver of the sovereign immunity bar before the action could proceed. See,
 
 e.g., City of Whittier v. United States Department of Justice,
 
 598 F.2d 561, 562 (9th Cir.1979);
 
 Midwest Growers Cooperative Corp. v. Kirkemo,
 
 533 F.2d 455, 465 (9th Cir. 1976). These cases, of course, do not have any bearing on the court’s ruling regarding the § 702 waiver since the application of the sovereign immunity bar in both was predicated on the lack of any congressional consent to suit that had been brought to the attention of the court.