Peter R. SCHNABEL; Premier Rides; Inc., a Maryland Corporation; Steven Marble; and Catalyst Entertainment, Inc., Plaintiffs–Appellees,

v.

Kevin Y. LUI; Froyer Holdings Development & Trading Co.; Froyer Holdings USA, Inc., a California Corporation; and FSN Top Secret Productions, Inc., a California corporation, Defendants–Appellants.

No. 01–55038.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 2002.

Filed Sept. 5, 2002.

---

Scott Warmuth and William L. Niu, Warmuth and Niu, Monterey Park, CA, for the defendants-appellants.

Michael D. Morin and Margaret Egler, Margolis & Morin, Los Angeles, CA, for the plaintiffs-appellees.

Before: FERNANDEZ and RAWLINSON, Circuit Judges, and SHEA,* District Judge.

SHEA, District Judge.

This action arises from a partnership gone awry. Peter Schnabel, Steven Marble, Kevin Lui, and the various entities respectively controlled by them entered a partnership agreement to produce "simulation" attractions for an amusement park in mainland China. As the project progressed, Schnabel and Marble became in-creasingly disenchanted with the acts and omissions taken of Lui and the entities associated with him. Schnabel and Marble, et al., filed suit in the United States District Court for the Central District of California. Shortly thereafter, Lui and various entities filed suit against Marble, et al., in California Superior Court, in and for Los Angeles County. Marble removed the state court action to federal court, based on diversity jurisdiction. The two suits were consolidated, as the removed action was essentially a counterclaim to the claims initially brought in federal court. After an extensive history of discovery abuses by Lui and his entities, the district court dismissed the claims in the removed complaint, struck the defendants' answer to the original complaint, and deemed admitted all of the original plaintiffs' requests for admission. At a bench trial on damages, defendants failed to present any evidence. The trial court awarded damages to Schnabel, Marble, and several entities, for claims including breach of contract and fraud in the induce-ment. Defendants Lui, Froyer Holdings Development & Trading Co., Froyer Holdings USA, Inc., and FSN Top Secret Productions, Inc., brought this appeal, primarily raising jurisdictional issues. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I. BACKGROUND

### A. Factual Background

In 1995, Premier Rides, Inc. ("Premier") began negotiations with Suzhou Amusement Land ("Suzhou") to build two amusement park rides in the People's Republic of China. The two attractions contemplated were "Time Machine" and "Top Secret," which would entail film footage presented in a 360 degree theater on fixed

---

* The Honorable Edward F. Shea, United States District Judge for the Eastern District of Washington, sitting by designation.

screens with a central motion base for seats. Premier and its President, Peter Schnabel ("Schnabel") began to work with Catalyst Entertainment, Inc. ("Catalyst") and its President, Steven Marble ("Marble") to develop, market, and sell the attractions to Suzhou. Catalyst and Marble had prior experience developing this type of ride for Universal Studios in Los Angeles, California, and Orlando, Florida. Premier and Catalyst agreed to work as equal partners to obtain the contracts necessary to build the attractions for Suzhou.

In the summer of 1995, Premier successfully negotiated agreements with Suzhou to sell it the two attractions. After signing contracts with Suzhou, Premier discovered that the proposed funding for the project—by letters of credit from a Chinese bank—was unacceptable to its financial institutions in the United States. As a result, Premier sought alternative sources of financing. In early 1996, Marble introduced Premier and Schnabel to Kevin Lui ("Lui"). Lui is fluent in Mandarin Chinese, had prior experience building attractions in China, and asserted that he had sufficient financial resources available to solve any problems in financing the project. Schnabel, Marble, and Lui executed partnership agreements in Los Angeles in February of 1996.

The primary partnership agreement provided, in relevant part, that the parties would "work together as partners in the development, financing and installation of the two Simulation Attractions," and would divide all profits equally. Lui and one of his companies, Froyer Holdings Development & Trading Co. ("Froyer Trading") assumed responsibility for financing the project. Premier and Schnabel were project managers responsible for reviewing costs and budgets, while Catalyst and Marble agreed to produce the projects, including fabrication, installation, and training. Under the agreement, Lui was to provide the partners with an accounting, and permit inspection of books and records. The partners also agreed to produce a "first class product," which would enable them to resell the ride concepts to other amusement parks.

As the project progressed, Lui, Froyer Trading and other companies controlled by Lui, including Froyer Holdings USA, Inc. ("Froyer USA"), and FSN Top Secret Productions, Inc. ("FSN Top Secret") increasingly alienated the other partners by their acts and omissions. Premier, Schnabel, Catalyst, and Marble complained that Lui failed to provide them with financial records and records of communication with third parties. Lui and his entities contracted with third parties directly, misappropriated designs, failed to pay vendors, and generally engaged in conduct which was harmful to the business reputations of the remaining partners. Lui also engaged in cost-cutting and elimination of various aspects of the attractions as designed, sacrificing quality. The rides were completed, but Premier, Catalyst, Schnabel and Marble found it impossible to resell the ride concepts due to the inferiority of the rides produced.

### B. Procedural Background

In March of 1998, Plaintiffs Premier, Schnabel, Catalyst, and Marble filed a complaint in the United States District Court for the Central District of California, against Lui and Froyer Trading (the "original action"). Less than four months later, Lui, Froyer USA, and FSN Top Secret filed a complaint in Los Angeles County Superior Court, against Marble and Catalyst (the "removed action").[1] The

1. The removed action also included Froyer Asia, Ltd., a foreign corporation with its principal place of business in China, as a plaintiff, and Catalyst International, Inc., a Nevada corporation with principal place of business

state court complaint alleged five causes of action, including breach of contract and an accounting. Around the same time, Plaintiffs in the original action filed their First Amended Complaint. On August 6, 1998, Marble and Catalyst removed the state action to federal court, pursuant to 28 U.S.C. § 1441(b), based on diversity jurisdiction. Later that month, Defendants in the original action filed their answer, which included a counterclaim for breach of contract.

The notice of removal in the removed action alleged the following citizenship as a basis for diversity jurisdiction: (1) that Lui was a citizen of Australia; (2) that Froyer USA was a California corporation, with its principal place of business in California; (3) that FSN Top Secret was a California corporation, with its principal place of business in California; (4) that Marble was a citizen of New Mexico; and (5) that Catalyst was a Delaware corporation with its principal place of business in New Mexico.

The same counsel represented Lui and Froyer Trading as defendants in the original action, and Lui, Froyer USA, and FSN Top Secret as plaintiffs in the removed action. Plaintiffs in the removed action did not move for remand, but did file a jury demand in the removed case. On April 14, 1999, the district court consolidated the two cases, as the removed case "appears to be a counterclaim to [the original action]." After consolidation, Schnabel, Premier, Marble, and Catalyst were denominated the "Plaintiffs," while Lui, Froyer Trading, Froyer USA, and FSN Top Secret and were denominated "Defendants." The court added the notation "and related counterclaims" to the caption. The parties proceeded in the consolidated case as realigned, but defense counsel continued to sign many papers and motions as

counsel for Lui and Froyer USA. Counsel occasionally also signed papers as counsel for Froyer Trading and FSN Top Secret.

On December 7, 1999, Plaintiffs filed a motion for leave to file a second amended complaint or, in the alternative, a counterclaim. On December 20, 1999, Defendants Lui, Froyer USA, and Froyer Trading filed a motion to dismiss for lack of jurisdiction. As part of the briefing filed on this motion, plaintiffs proposed a Third Amended Complaint, to cure any jurisdictional defect in the pleading of the proposed Second Amended Complaint. The district court heard the Plaintiffs' motion in conjunction with Defendants' motion to dismiss for lack of subject matter jurisdiction on January 10, 2000. Defendants sought dismissal of Plaintiffs' Proposed Second Amended Complaint for failure to plead the basis for diversity jurisdiction, and the court granted the motion. However, because Defendants "only challenged the allegations in the complaint, not the factual basis for diversity," the court granted leave to amend, and accepted the proposed Third Amended Complaint for filing.

The Third Amended Complaint added claims against Defendants Froyer USA and FSN Top Secret, and alleged thirteen causes of action. The Third Amended Complaint alleged citizenship of the Plaintiffs: that Schnabel was a citizen of Germany domiciled in the British West Indes; that Premier was a Maryland corporation with its principal place of business in Maryland; that Marble was a United States citizen domiciled in New Mexico; and that Catalyst was a Delaware corporation with its principal place of business in New Mexico. For citizenship of the Defendants, the Third Amended Complaint alleged that Lui was a citizen of Australia domiciled in

in New Mexico, as a defendant. As neither is party to this appeal, and neither entity im-

pacts our analysis, they are omitted from further discussion for the sake of clarity.

Australia, that Froyer Trading was an entity of unknown form with its principal place of business in China, and that both Froyer USA and FSN Top Secret were California corporations whose principal place of business was Los Angeles. The Third Amended Complaint was served on counsel for all Defendants. No summons was served with the Third Amended Complaint, although it was the first pleading to state claims against Froyer USA and FSN Top Secret.

On February 2, 2000, Defendants Lui and Froyer USA filed a motion to dismiss (the Third Amended Complaint) for lack of subject matter jurisdiction, and for failure to join an indispensable party. For the motion to dismiss for lack of subject matter jurisdiction, Defendants argued that FSN Top Secret was a joint venture or partnership involving the Plaintiff Catalyst, which would destroy diversity jurisdiction. However, evidence submitted by the Defendants in support of this argument demonstrated that FSN Top Secret was in fact a California corporation.[2] The court thus rejected this argument, held that the Third Amended Complaint affirmatively alleged complete diversity of the parties, and noted that Defendants had proffered no evidence to challenge the factual grounds on which diversity jurisdiction was premised.

The court also rejected dismissal for failure to join the partnership as an indispensable party. Defendants argued that the partnership of Lui, Schnabel, and Marble should be joined as an indispensable party, and that any joinder of the partnership would destroy diversity jurisdiction. The court found that the partnership was not an indispensable party, because California law permits actions against general partners for claims arising from the partnership, and the partnership at issue had no separate name, assets or contracts. As such, the nonjoinder of the partnership would not prevent the court from according complete relief among the parties, nor would it prejudice any party. Holding that the partnership did not meet the threshold standard articulated in Rule 19, the court denied the motion to dismiss the action for failure to join an indispensable party under Rule 12(b)(7).

After substantial discovery abuses by the Defendants, the district court dismissed the Defendants' claims in the removed complaint, struck the Defendants' answer to the original complaint, and deemed admitted all of the Plaintiffs' requests for admission. The remaining claims of Plaintiffs' Third Amended Complaint proceeded to trial on September 22, 2000. On November 27, 2000, the court entered findings of fact and conclusions of law. The court found Defendants liable to Plaintiffs for breach of contract, fraud in the inducement, and intentional interference with prospective economic advantage. The court entered final judgment in favor of the Plaintiffs for various amounts on various claims, including separate damage awards for breach of contract and fraud in the inducement, against Defendants Lui, Froyer Trading, Froyer USA, and FSN Top Secret, with Defendants held jointly and severally liable. Defendants Lui, Froyer Trading, Froyer USA, and FSN Top Secret timely filed their notice of appeal.

## II. STANDARD OF REVIEW

■■■ A district court's decision to deny joinder under Federal Rule of Civil Proce-

---

**2.** Defendants claimed that Marble, in his deposition, identified FSN Top Secret as a partnership based on the following testimony: "[FSN Top Secret]'s a corporation owned by Kevin Lui and it's a partnership that includes Froyer, Suzhou Amusement Land, and this Entity New Wave Entertainment that Kevin Lui created and Catalyst International."

dure 19 is reviewed for abuse of discretion. *United States v. Bowen*, 172 F.3d 682, 688(9th Cir.1999) (citing *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996)). Legal conclusions underlying the decision regarding joinder are reviewed de novo. *Id.* Removal presents a question of subject matter jurisdiction, which is reviewed de novo. *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir.1998). We review subject matter jurisdiction de novo despite any failure to object to the removal in the trial court. *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1311 (9th Cir.1997). Likewise, whether subject matter jurisdiction exists for the original action is a question of law reviewed de novo. *Hexom v. Oregon Dep't of Transp.*, 177 F.3d 1134, 1135 (9th Cir. 1999); *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1011 (9th Cir.1999). However, the district court's findings of fact relevant to subject matter jurisdiction are reviewed under the clearly erroneous standard. *See Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir.1998). When underlying facts are undisputed, a district court's finding that personal jurisdiction exists is reviewed de novo. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1319– 20 (9th Cir.1998); *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996). The district court's findings of fact following a bench trial are reviewed for clear error. *Ambassador Hotel Co. Ltd. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir.1999) (citing Fed.R.Civ.P. 52(a), *Howard v. United States*, 181 F.3d 1064, 1065 (9th Cir.1999)). The district court's computation of damages is a factual finding reviewed for clear error. *Marsu v. Walt Disney Co.*, 185 F.3d 932, 938 (9th Cir.1999).

## III. ANALYSIS

Defendants Lui, Froyer Trading, Froyer USA, and FSN Top Secret argue first that the district court abused its discretion in denying their motion to dismiss for failure to join the partnership as an indispensable party. Defendants next contend that the district court lacked subject matter jurisdiction over both the original action and the removed action, claiming that FSN Top Secret should have been considered a citizen of New Mexico, based on factual issues raised for the first time on appeal. Defendants also claim that the district court lacked personal jurisdiction over Froyer USA and FSN Top Secret because no summons was served with the Third Amended Complaint. Finally, Defendants argue that the district court erred in awarding damages on both claims of fraud in the inducement and breach of contract.

## A. Joinder of the Partnership as an Indispensable Party

On review of the district court's denial of Defendants' motion to dismiss for failure to join an indispensable party, we first examine the standard articulated in Rule 19 for indispensable parties. Fed.R.Civ.P. 12(b)(7); 19(b). To find that a person who is not joined is "indispensable," the absent person must first be deemed necessary as a "person to be joined if feasible" under Rule 19(a)(1) and (2). Fed.R.Civ.P. 19(b). If the person is necessary, and cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable." *Id.* Rule 19 then provides four factors for the trial court to consider, in determining whether the matter should proceed or be dismissed for failure to join the absent person:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

■ To begin, the district court held that the partnership was not a "person to be joined if feasible," and therefore rejected dismissal for failure to join an indispensable party. If joinder of a party will not deprive the court of subject matter jurisdiction, the party shall be joined as necessary if:

(1) [I]n the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).[3]

Under California law, partners are permitted to "maintain an action against the partnership or another partner for legal or equitable relief." Cal. Corp.Code § 16405(b). Relief is available against another partner for an accounting, enforcement of rights under the partnership agreement, dissolution, and to enforce other rights of a partner arising under the code or for rights independent of the partnership agreement. *Id.* Given the state law permitting plaintiff partners to sue defendant partners for breach of contract, dissolution, and accounting, the district court rejected the argument that Plaintiffs' claims stated injury only to the partnership. In addition, Plaintiffs presented affirmative evidence that the partnership had no separate assets, and was not a party to any contracts in its own name. The court therefore held that complete relief could be afforded among existing parties without joinder of the partnership, and that the failure to join the partnership would not prejudice any party.

Defendants cite several California cases for the proposition that the "interest of an individual partner in partnership assets is not subject to attachment or execution except on a claim against the partnership entity." *Epstein v. Frank,* 125 Cal.App.3d 111, 119–120, 177 Cal.Rptr. 831 (1981); *see also Hildebrand v. Stonecrest Corp.,* 174 Cal.App.2d 158, 169, 344 P.2d 378 (1959); *Potts v. Whitson,* 52 Cal.App.2d 199, 207, 125 P.2d 947 (1942). In *Epstein,* the most recent of these cases, the court relied on Cal. Corp.Code §§ 15025, 15509. *Epstein,* 125 Cal.App.3d at 120, 177 Cal.Rptr. 831. As the district court noted, Section 15025 was repealed, and Section 16405 was enacted in its stead, in 1996. Cal. Stats.1996, c. 1003 (A.B.583), §§ 1.2, 2 (operative Jan. 1, 1999). Likewise Section 15509 applies only to limited partnerships. *Epstein,* 125 Cal.App.3d at 120, 177 Cal.Rptr. 831.

Assuming that the parties' partnership agreement was governed by the repealed law which was in effect in 1996, an issue not explicitly addressed by the parties, the authority cited remains inapposite. In *Ep-*

---

**3.** If the partnership were joined, diversity jurisdiction would not lie, as a partnership is a citizen of every state of which its partners are citizens. *See Carden v. Arkoma Assocs.,* 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

*stein*, for example, the court noted that "a partnership is generally regarded as an aggregate of individuals and has no domicile or residence separate and distinct from the individuals who constitute it." *Id.* at 119, 177 Cal.Rptr. 831 (citations omitted). By way of contrast, the court also noted that "[t]he authorities are replete with instances where the partnership is considered an entity." *Id.* Addressing this competing authority, the *Epstein* court determined that "analysis of the cases demonstrates that the concept to be utilized in any given case is dependent largely upon policy considerations and upon which concept will achieve a fair and equitable disposition of the issues in controversy." *Id.* The court then held that a limited partnership would be treated as an entity for purposes of applying the statute of limitations. *Id.* at 120, 177 Cal.Rptr. 831.

■ In the instant case, the partnership had no name, assets, or contracts as a partnership. Unlike *Hildebrand*, no judgment was entered against the partnership as an entity which had not appeared in its own name. *See Hildebrand*, 174 Cal. App.2d at 169, 344 P.2d 378(amending judgment to name only individual partners, and affirming judgment as amended). Thus, even assuming that the repealed statute would apply, the authority weighs in favor of treating the partnership as a collection of individual partners. In light of the current California statute permitting suit against individual partners, and the finding that the partnership did not have its own assets, the district court's legal conclusion that the partnership need not be joined was correct. *See* Cal. Corp. Code § 16405(b).

Having established that an action is available against and among individual partners, we note that Defendants have not addressed how the partnership factually meets the standard under Rule 19 as a person "to be joined if feasible." Fed. R.Civ.P. 19(a). It is undisputed that the partnership has no assets and no contractual obligations, hence no showing that in the partnership's absence "complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). For the second prong, there is no argument that the partnership had interests which could not be protected without joinder, nor that existing parties faced a risk of multiple or inconsistent liabilities. *See* Fed.R.Civ.P. 19(a)(2)(i), (ii). As such, the district court properly found that the partnership was not an entity "to be joined if feasible" under Rule 19(a). Because the partnership is not a necessary party under standard of Rule 19(a), it cannot be indispensable under Rule 19(b). Fed.R.Civ.P. 19(b). Consequently, the district court's denial of the motion to dismiss for failure to join an indispensable party was not an abuse of discretion.

## B. Exercise of Diversity Jurisdiction

### 1. Jurisdiction over Removed Action

Defendants argue that although FSN Top Secret was a California corporation, its principal place of business was New Mexico, thus it is a citizen of New Mexico. *See* 28 U.S.C. § 1332(c)(1), *Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491–92 (9th Cir.1972). Plaintiffs Marble and Catalyst were citizens of New Mexico. Therefore, Defendants argue that diversity jurisdiction did not exist over their suit against Marble and Catalyst on removal, and that the district court erred in exercising jurisdiction.

■ Although subject matter jurisdiction is reviewed de novo and may be raised at any point in the proceedings, the standard shifts when the argument raises new factual bases for the lack of jurisdiction which were not developed in the trial court

record. Under *Albrecht v. Lund*, the failure to contest facts alleged on removal constitutes an admission of those facts. *Albrecht v. Lund*, 845 F.2d 193, 194 (9th Cir.1988) (citing *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir.1958)). In this context, we will remand to the district court for a determination of diversity only "if, on the face of the pleadings at the time of removal there exists a 'substantial question concerning the plaintiff's citizenship.'" *Albrecht*, 845 F.2d at 194 (citing *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985)).

In this case, Defendants filed their complaint in state court identifying Lui as a resident of Australia, and Froyer USA and FSN Top Secret as California corporations. Defendants identified the defending Plaintiffs Marble as a resident of California, and Catalyst as an entity doing business in the state of California. Plaintiffs filed their "Notice of Removal under 28 U.S.C. § 1441(b) [Diversity]" on August 6, 1998. In doing so, Plaintiffs alleged in the Notice that Marble was a citizen and resident of New Mexico, and that Catalyst was a New Mexico corporation, with its principal place of business in New Mexico. Plaintiffs also asserted that Froyer USA and FSN Top Secret were California corporations, both having their principal place of business in California. Defendants filed a jury demand, and never brought a motion to remand or to otherwise contest this factual allegation in the notice of removal.

Information regarding the principal place of business of the corporate Defendants was uniquely within Defendants' capacity to ascertain. Having failed to raise a factual contention in the district court, which if proved would deprive the court of subject matter jurisdiction, Defendants now attack the judgment entered against them.

▇ Applying the standard of *Albrecht v. Lund*, nothing on the face of the pleadings at time of removal indicated that FSN Top Secret had a principal place of business in New Mexico. *See Albrecht*, 845 F.2d at 195. These Defendants subsequently failed to contest the allegations of citizenship, and did not move for remand. *See id.* Because Defendants failed to raise a "substantial question of diversity of citizenship at the time of removal," and failed to submit evidence of lack of diversity to the district court at any time thereafter, we refuse to remand the matter, and affirm the district court on this issue. *Id.*

**2. Diversity Jurisdiction over Original Action**

Defendants also challenge the district court's exercise of diversity jurisdiction in the original action, alleging that FSN Top Secret's purported "nerve center" was in New Mexico. In support of this argument, Defendants cite the deposition testimony of Steven Marble. Nothing in this deposition supports its position. Defendants' argument is based on an attenuated theory: that the deposition shows that the principal place of business for Plaintiff Catalyst was New Mexico; that we should infer that FSN Top Secret conducted its business only through Catalyst; and thus attribute Catalyst's New Mexico "nerve center" to FSN Top Secret. Even if Defendants could show some deposition testimony clearly supporting their argument, there is no indication in the record that evidence of a New Mexico "nerve center" was filed or otherwise raised in the district court. As noted by the district court, FSN Top Secret simply described itself as "a corporation incorporated in the State of California" in the complaint filed in the removed action.

After the Third Amended Complaint was filed in the district court, Defendants Lui and Froyer USA did file a motion to dismiss with their Rule 19 motion. The

motion to dismiss the Third Amended Complaint alleged that FSN Top Secret was a joint venture, the joinder of which destroyed diversity. In support of this motion, Defendants also cited Marble's deposition testimony, that "[FSN Top Secret]'s a corporation owned by Kevin Lui and it's a partnership that includes Froyer, Suzhou Amusement Land, and this entity New Wave Entertainment that Kevin Lui created and Catalyst International." As noted above, this argument was rejected by the district court. However, the citation to Marble's deposition belies the argument that FSN Top Secret's purported New Mexico "nerve center" is newly discovered. Marble's deposition was available and cited by Defendants in support of their Motion to Dismiss for lack of subject matter jurisdiction on the theory that FSN Top Secret was a joint venture.

 Although *Albrecht v. Lund* specifically deals with jurisdictional facts in the context of removal, we see no principled distinction between that case and a case originally filed in the district court for purposes of diversity jurisdiction. *See Albrecht*, 845 F.2d at 195. "Once a diversity case has been tried in federal court … considerations of finality, efficiency, and economy become overwhelming." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Consequently, we hold that the rule of *Albrecht v. Lund* applies equally to actions originally filed in the district court. Absent any allegation in the record that FSN Top secret was a citizen of New Mexico, we will only remand for a determination of diversity jurisdiction if, on the face of the pleadings, there exists a "substantial question" concerning the citizenship of the party alleged to be nondiverse on appeal.

The procedural history of this case demonstrates that Defendants, without factual support, have repeatedly asserted new theories to defeat diversity jurisdiction. In its complaint filed in the removed action, FSN Top Secret identified itself as a California corporation. Later, on motion to dismiss for lack of subject matter jurisdiction, the district court entered factual findings that FSN Top Secret was a California corporation, at a time when Marble's deposition was available and cited by Defendants. Because there was no allegation in the trial court that FSN Top Secret was a citizen of New Mexico, we decline to reopen the matter on appeal. On the record of factual issues raised before it, the district court's factual finding that FSN Top Secret was a California corporation for diversity purposes was not clear error.

## C. Personal Jurisdiction over Froyer USA and FSN Top Secret

Defendants FSN Top Secret and Froyer USA argue that the district court lacked personal jurisdiction over them for claims stated in the Third Amended Complaint because they were not served with a summons. Plaintiffs contend that despite any technical defect in failure to serve a summons with the Third Amended Complaint, the district court did have personal jurisdiction over FSN Top Secret and Froyer USA. FSN Top Secret and Froyer USA were added as Defendants in the Third Amended Complaint, which was served on the attorney of record for all Defendants in the consolidated action. Although these were the first claims stated against FSN Top Secret and Froyer USA, no summons was served on either party.

 Froyer USA explicitly joined in a motion under Rule 12(b) after service of the Third Amended Complaint. Under Rule 12(h)(1), Froyer USA has waived any defense of lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process, by failing to raise the defense in its first motion under Rule 12(b). *See* Fed.R.Civ.P. 12(b), (h)(1)(A).

We therefore need only examine whether the exercise of personal jurisdiction was proper as to FSN Top Secret.

Plaintiffs argue that FSN Top Secret also waived any defense under Rule (h)(1), by failing to join in the first 12(b) motion brought by codefendants Lui and Froyer USA, where all Defendants were represented by one attorney. Specifically, under Rule 12(g), when any motion is brought under Rule 12, all Rule 12 defenses must be raised in the motion, unless exempt from waiver under Rule 12(h)(2). Fed.R.Civ.P. 12(g); 12(h)(2). Plaintiffs ask us to adopt a rule that when the same counsel appears for all Defendants of record, one party should not be allowed to circumvent the consolidation requirements of Rule 12(g) by failing to join in the Rule 12(b) motions of its codefendants. *See Church of Scientology v. Linberg*, 529 F.Supp. 945, 966–67 (C.D.Cal.1981).

 In *Church of Scientology*, two defendants argued that the defense of lack of personal jurisdiction was not waived by the failure to raise it in the Rule 12(b) motions of the remaining codefendants. *Id.* at 966. The same attorney represented all codefendants, but filed a Rule 12(b) motion only on behalf of "those defendants herein who have been properly served with process." *Id.* Because counsel could cite no legitimate reason why the remaining two defendants could not have raised their defenses in the same motion, the district court held that the defenses were waived. *Id.* at 966–67. The practical effect of permitting defendants to raise the defense in a second Rule 12(b) motion would have been circumvention of the consolidation requirements of Rule 12(b), (g) and (h). *Id.* Given the purpose of consolidation, to prevent "the dilatory tactic of filing a series of 12(b) motions," the district court held that the defense of lack of personal jurisdiction was waived by failing to join in the 12(b) motion of codefendants. *Id.* Despite the policy concerns underlying the waiver provisions of Rule 12, nothing in the rule requires codefendants represented by the same counsel to raise or waive all their defenses together.[4] We decline to read this requirement into the rule, and reject *Church of Scientology's* contrary conclusion.

Plaintiffs next argue that the voluntary appearance of FSN Top Secret and Froyer USA in the removed action through counsel waives any attack on personal jurisdiction in the original federal action. Plaintiffs contend that when actions are consolidated under the Federal Rules of Civil Procedure, the suits are merged, and become one form of action. *See Roden v. Empire Printing Co.*, 135 F.Supp. 665, 667 (D.Alaska 1955)(citing Fed.R.Civ.P. 42(a)). In *Roden*, three actions were consolidated, and plaintiffs were entitled to attorneys' fees under Alaska law. *Id.* If the actions were treated as separate actions, plaintiffs would have been entitled to a substantially larger award of fees. The district court rejected the award of fees, holding that "[w]hen so consolidated the suits are merged and constitute thereafter but one action." *Id.*

In response to this authority, FSN Top Secret counters that it cannot lose its right to raise its individual defenses in the original federal action, because consolidation does not impact its separate and distinct rights. *See J.G. Link & Co. v. Continental Cas. Co.*, 470 F.2d 1133, 1138 (9th Cir.1972). In *Link*, the injured party sued the insured, who brought a third party complaint against the insurer. *Id.* at 1134. The insurer removed the case to federal

---

4. As a practical matter, counsel may face a conflict of interest if two clients have such diverse interests that their defenses cannot be joined in one motion, but that issue is not before us.

court, and the court remanded the original action, but retained jurisdiction over the third party complaint. *Id.* The injured party prevailed in state court, obtained a final judgment, and brought suit to enforce the judgment against the insurer in federal court. *Id.* Upon motion of the insured and the injured party, the actions were consolidated for trial. *Id.* at 1135. After a misrepresentation by the insured, the insured was estopped from asserting coverage under the insurance policy. *Id.* at 1138. The insurer argued that, because of the consolidation, the injured party should also be estopped from asserting policy coverage. *Id.* As a preliminary matter, the court noted that "an act of consolidation does not affect any of the substantive rights of the parties." *Id.* (citing 5 J. Moore's Federal Practice § 42.02 (2d ed.1971)). Applying state law, the Ninth Circuit rejected the argument that the injured party was subject to estoppel, and held that the insured had "rights vested under the terms of the policy which entitled them to coverage. . . ." *Id.*

At first glance, the holdings in *Roden* and *Link* appear to be in conflict regarding the nature of consolidation. "Consolidation" as a term of legal procedure is generally used in three different contexts: (1) when several actions are stayed while one is tried, and the judgment in the case tried will be conclusive as to the others; (2) when several actions are combined and lose their separate identities, becoming a single action with a single judgment entered; and (3) when several actions are tried together, but each suit retains its separate character, with separate judgments entered. 9 Wright & Miller, Fed. Practice & Procedure: Civil 2d § 2382 (1995). The language of Rule 42(a) seems to authorize consolidation either as merger or as retaining separate character, but the majority of courts have held that consolidated actions retain their separate character. *See id.* at n. 9 (citing cases from

Second, Third, Fifth, Sixth, Seventh, and Eighth circuits); Fed.R.Civ.P. 42(a). However, the primary source of the majority rule is a decision which predates the adoption of Rule 42 on July 1, 1966. *See id.* (citing *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)).

In *Johnson,* the Court examined consolidation under 28 U.S.C. § 734, which has since been repealed and replaced by Rule 42(a). Under the statute, 28 U.S.C. § 734, consolidation was permitted as a matter of convenience and economy in administration, but did not merge the suits into a single cause, nor change the rights of the parties, nor make those who are parties in one suit parties in another. 289 U.S. at 496–97, 53 S.Ct. 721. The Second and Fifth Circuits have questioned the viability of this holding in *Johnson* after the repeal of the statute, and enactment of Rule 42(a). *See Sandwiches, Inc. v. Wendy's Int'l, Inc.,* 822 F.2d 707, 709–10 (7th Cir. 1987); *Road Sprinkler Fitters Local Union v. Continental Sprinkler Co.,* 967 F.2d 145, 149 (5th Cir.1992); *Ringwald v. Harris,* 675 F.2d 768, 770–71 (5th Cir.1982). In *Road Sprinkler Fitters,* the Fifth Circuit rejected *Johnson* in the context of analyzing whether or not final judgment had been entered under Rule 54(b). *Road Sprinkler Fitters,* 967 F.2d at 149–50. The Fifth Circuit applied a case-by-case approach to merger, examining "the nature of the consolidation and the relationship of the consolidated actions," to determine whether the cases were merged for purposes of applying Rule 54(b). *Id.* at 151(citing *Ringwald,* 675 F.2d at 771). In *Ringwald,* the Fifth Circuit examined the language of Rule 42(a), and compared the rule with the pre-rules statute cited in *Johnson.* 675 F.2d at 770 n. 4. Specifically, the repealed statute "did not contain an express provision for a joint hearing or trial, as does the first clause of Rule

42(a)." *Id.* Further, the Advisory Committee Notes on Rule 42(a) indicate that "in so far as the statute differs from this rule, it is modified." *Id.*

In the context of merger of consolidated actions for purposes of Rule 54(b), we have adopted a stronger rule which is in accord with those circuits rejecting *Johnson*, rather than the case-by-case approach of *Ringwald.* In *Huene*, for example, we held that entry of judgment disposing of one of two consolidated cases was not an appealable judgment under 28 U.S.C. § 1291, absent a Rule 54(b) certification. *Huene v. United States*, 743 F.2d 703, 705 (9th Cir.1984). We considered adopting the flexible test of *Ringwald*, but held that "[t]his has the disadvantage of leaving the finality of the judgment hazy and subject to varying interpretations," and concluded that "the best approach is to permit the appeal only when there is a final judgment that resolves all of the consolidated actions unless a 54(b) certification is entered by the district court." *Id.* at 704–05. While *Huene* did not expressly conclude that Rule 42(a) supersedes *Johnson*, *Huene* implicitly rejects some consequences of *Johnson* by treating consolidated actions as merged for purposes of appeal. That said, *Huene* is not in conflict with *Link.*

At the same time, *Johnson* maintains viability in other contexts. *See, e.g., Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n. 1 (9th Cir.1987) (for purposes of diversity jurisdiction, consolidation of cases does not make parties in one suit parties in another); *In re U.S. Financial Securities Litig.*, 609 F.2d 411, 428 n. 58 (9th Cir.1979) (discretionary consolidation under Rule 42 cannot alter right to jury trial); *Geddes v. United Financial Group*, 559 F.2d 557, 561 (9th Cir.1977) (consolidation for purposes of discovery does not merge suits into single cause of action).

Nonetheless, we do not resolve the issue of whether consolidated actions in general retain their separate character under *Johnson* and its progeny, or are merged for purposes of determining personal jurisdiction. We may affirm on any ground supported by the record, and do so based on the facts of this case. *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 846 n. 15 (9th Cir.2001); *Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072, 1077 n. 3 (9th Cir.1999).

The district court in this case ordered the two actions "consolidated for all further proceedings," finding that the removed action "appears to be a counterclaim to[the original federal action]." Because the Third Amended Complaint stated claims in the nature of compulsory counterclaims, no service of summons was necessary to effect personal jurisdiction.

In state court, Lui, FSN Top Secret, and Froyer USA filed their complaint against Marble and Catalyst, who removed the action to federal court. Under Rule 13, a counterclaim is compulsory in the responsive pleading "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and does not require joinder of parties over whom the court lacks jurisdiction. *See* Fed.R.Civ.P. 13(a). Consequently, when the state action was removed to federal court, Marble and Catalyst were required to raise as counterclaims any claims they had arising out of the same transaction or occurrence, against Lui, FSN Top Secret, and Froyer USA.

The day Marble and Catalyst removed the case to federal court, they also filed a "notice of related case" in the removed case. The district court later consolidated the cases, noting that the removed case "appears to be a counterclaim" to the orig-

inal federal case, and ordered these cases "consolidated for all further proceedings." Plaintiffs filed their "Motion for Leave to file [Second] Amended Complaint or in the Alternative, a *Counterclaim* " in the consolidated action. Defendants Lui, Froyer USA and Froyer Trading then filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing defect in pleading the basis for diversity jurisdiction in the Second Amended Complaint. Plaintiffs then submitted a Proposed Third Amended Complaint. The district court granted the Defendant's motion to dismiss, but permitted Plaintiffs to file the Third Amended Complaint, to cure the defects in pleading jurisdiction. The Third Amended Complaint added FSN Top Secret, and Froyer USA as Defendants to the original action.

▮▮▮▮ Had Plaintiffs titled their Third Amended Complaint as "Counterclaim," or "Third Amended Complaint and Counterclaim," Defendants could not have raised a defect in summons, because it would have been clear that the claims were responsive to the complaint of FSN Top Secret as a *plaintiff* in the removed action. No summons is required with a counterclaim, as plaintiffs who avail themselves of the district court consent to personal jurisdiction.[5] When a state court action is removed to federal court, the removal is treated as if the original action had been commenced in federal court. *Resolution Trust Corp. v. Bayside Developers,* 43 F.3d 1230, 1239 (9th Cir.1994). Thus, when examining the court's exercise of personal jurisdiction and assuming removal is proper, the removed plaintiffs should be treated no differently from plaintiffs who file in federal court originally.[6]

▮▮▮ FSN Top Secret and other Defendants filed their complaint against Plaintiffs, who removed to federal court, where the two actions were consolidated.[7] Claims stated against FSN Top Secret and Froyer USA in the Third Amended Complaint were in the nature of compulsory counterclaims, because they arose from the same transaction or occurrence as the removed action. *See* Fed.R.Civ.P. 13(a), (f). FSN Top Secret, stating claims in the removed case, triggered Plaintiffs' obligation to raise all compulsory counterclaims, because FSN Top Secret was not a party in the original federal action. When a district court permits amendment to add omitted counterclaims in a consolidated action, the alignment of counterclaims in an "amended complaint," as opposed to an "answer and counterclaim" should not generate a defense that is otherwise unavailable. We hold that in a consolidated action, a party cannot avail itself of the court's jurisdiction, bringing claims which

---

**5.** For example, when a party who has appeared only as a defendant, defends and files a counterclaim, objection to personal jurisdiction is waived. *See, e.g., Freeman v. Bee Machine Co.,* 319 U.S. 448, 453, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) (defendant who served in state court, and after removal to federal court, appeared and filed a counterclaim "thus invoked the jurisdiction of the federal court and submitted to it."); *Merchants' Heat & Light Co. v. Clow & Sons,* 204 U.S. 286, 289, 27 S.Ct. 285, 51 L.Ed. 488 (1907) (in pre-rules decision, defendant who brought a counterclaim "became a plaintiff in its turn," and could not thereafter disclaim service of process).

**6.** Once Marble and Catalyst raised this compulsory counterclaim, the joinder of Schnabel and Premier as plaintiffs was proper. *See* Fed.R.Civ.P. 19(a).

**7.** Defendants could argue that by contesting removal in this appeal, they did not actually appear as plaintiffs in the removed action. However, as discussed herein, jurisdiction on removal was proper. Further, after removal but before consolidation, Defendants FSN Top Secret and Froyer USA filed a jury demand, and a joint report of early meeting of counsel.

mandate the filing of counterclaims, and thereafter attack personal jurisdiction when judgment is entered against the party on the counterclaims, even if those counterclaims are not so denominated.

■■■ In this case, where all parties appeared as plaintiffs, and all claims arose from the same transaction or occurrence, the district court properly exercised personal jurisdiction over all parties.[8] Therefore, the judgment entered against FSN Top Secret is affirmed, as the record supports the entry of judgment on compulsory counterclaims of the Plaintiffs. Regarding Froyer USA, we affirm the judgment because Froyer USA waived the defense by not raising it in its first Rule 12(b) motion after the Third Amended Complaint was filed and served.

### D. Damages Awarded for Fraud and Breach of Contract

■■■ Defendants argue that the district court erred in awarding separate damages on "identical evidence" of wrongful conduct. *See Tavaglione v. Billings*, 4 Cal.4th 1150, 1159, 17 Cal.Rptr.2d 608, 847 P.2d 574 (1993). Where legal availability of damages is concerned, "fraud in the inducement and breach of contract causes of action" can support separate damage awards, provided the actions "arise out of different obligations and different operative facts." *Baker v. Superior Ct.*, 150 Cal.App.3d 140, 146, 197 Cal.Rptr. 480 (1983); *see Symcox v. Zuk*, 221 Cal.App.2d 383, 391, 34 Cal.Rptr. 462 (1963) (fraud in the inducement and breach of contract claims support tort and contract damages in the same judgment where claims involve separate rights); *Pat Rose Assocs. v.*

*Coombe*, 225 Cal.App.3d 9, 18–20, 275 Cal. Rptr. 1 (1990) (fraud and contract damages available where damage was distinct and entire amount could have been awarded under fraud theory).

In this case, the district court's findings of fact indicated that on Plaintiffs' breach of contract claim, Plaintiffs Marble and Schnabel were damaged from the failure to account for, or pay, any of the profits obtained from the sales of the Time Machine and Top Secret projects in the underlying sale of the rides to Suzhou Amusement Land. In awarding damages for the breach, the court gave seven specific ways in which the contracts were breached, involving failure to account for the partnership profits from the project sales to Suzhou. Judgment was awarded on these damages, based on the calculation of lost profits in the breach of the partnership agreement.

On Plaintiffs' claims of fraud in the inducement, the court cited a lack of intent to perform under the contract, and concealment of that lack of intent. In addition, the district court noted that, as a result of Defendants' fraud, Plaintiffs Schnabel and Marble were deprived of the opportunity to market and reproduce the rides; i.e., resell the rides to other amusement park owners other than Suzhou. Awarding damages for fraud in the inducement, the court awarded fraud damages which represented "their share of the lost profits from resales of the Top Secret and Time Machine rides." Judgment was entered against Defendants on Plaintiffs' fraud claims in this amount.

---

8. "The courts, not the parties, are responsible for aligning the parties according to their interests in the litigation. If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Continental Airlines*, 819 F.2d at 1523. In a procedural context wherein each party has appeared as a party plaintiff, the designation of one group as "plaintiffs" and the other as "defendants" is somewhat arbitrary, provided the respective groups are aligned according to their interests.

■ In its findings of fact and conclusions of law, the district court did recite facts which were relevant to both breach of contract and fraud claims. However, the court distinguished between breach of contract damages and fraud damages. The damages for breach of contract were directly based on the unaccounted profits obtained by Defendants from Suzhou, and not paid to Plaintiffs Schnabel and Marble. By contrast, the fraud damages were based on the lost opportunity to resell the rides to other vendors. Where the fraud damage is a distinct harm, there is no double counting in the damage award. As a consequence, the district court did not award damages that were clearly unsupported by the evidence, and thus did not commit clear error.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed. The district court did not abuse its discretion in failing to join the partnership as an indispensable party. Diversity jurisdiction was proper for both the original federal action and the removed state court action. The exercise of personal jurisdiction was proper, where the claim asserted was in the nature of a counterclaim against plaintiffs in the consolidated action. Finally, the district court's award of damages for both fraud and breach of contract claims was not clearly erroneous.

**AFFIRMED.**